MAINE MOTOR COACHES, INC., Petitioner

*vs.*

PUBLIC UTILITIES COMMISSION.

Penobscot.     Opinion November 18, 1925.

*Exceptions will not lie to a refusal to issue a writ of mandamus to compel the Public Utilities Commission to issue the certificate provided for in Sec. 4 of Chap. 211, Public Laws, 1923, unless it appears that the decree of the Justice denying the writ was based on some erroneous ruling of law or there was an abuse of judicial discretion.*

In view of the well recognized control over highways by the state and the possible menace to public safety and the destruction of the highways by the operation over them of heavy high-powered motor busses, the authority of the Legislature to prohibit such operation cannot be questioned.

In view of the history of this class of legislation and its obvious purpose, the certificate permitting such operation cannot be viewed as intended solely for the purposes of registration and its issuance a mere ministerial act.   If such had been the intention of the Legislature, it is inconceivable that the statute authorizing its issue could have been couched in the terms in which we find it. If more was intended, then a large measure of discretion must be involved in the issuance of such certificates.

No abuse of discretion appearing either on the part of the Public Utilities Commission in refusing to issue a certificate or of the court below in refusing to issue the peremptory writ of mandamus, or any erroneous ruling of law on which the court's decree was based, the exceptions must be overruled.

On exceptions.   A petition for writ of mandamus to compel respondents to issue a certificate to operate motor busses for carrying passengers for hire on a regular route between Waterville and Bangor. The petitioner contended that the act of issuing the certificate by the Public Utilities Commission under Chapter 211 of the Public Laws of 1923 was a ministerial act only and that the Commission had no discretion in the matter.   A hearing was had upon the petition and the presiding Justice refused to issue the peremptory writ and exceptions were taken by petitioner.   Exceptions overruled.

The opinion states the case sufficiently.

*Charles D. Bartlett and George F. Eaton,* for petitioner.

*Raymond Fellows, Attorney General,* for respondents.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, DEASY, STURGIS, BARNES, BASSETT, JJ.

WILSON, C. J. The petitioner under Chap. 211 of the Public Laws of 1923 applied to the Public Utilities Commission for a certificate to operate motor busses on certain highways of the state over prescribed routes for the carriage of passengers for hire. After hearing, a certificate was refused by the Commission. The petitioner then applied to a justice of this court for a writ of mandamus to compel the issuance of a certificate on the ground that it was a ministerial act and no discretion is vested in the Commission in the issuing of such certificates.

The justice below, after hearing, refused to issue the peremptory writ, and the case is before this court on the petitioner's exception to the decree of the justice below. Unless it appears that the decree below was based on some erroneous ruling of law or there was an abuse of judicial discretion, exceptions do not lie. *Day* v. *Booth*, 122 Maine, 91.

No complaint is made of any abuse of judicial discretion. The sole issue being the interpretation of the Act above referred to and particularly of Section 4 thereof.

At the time of the enactment in the different states of nearly, if not all of the Acts regulating Public Utilities, the transportation of passengers for hire by automobiles had not reached a stage where they were classed as common carriers in the Acts and were not made subject to the regulations imposed on street and steam railroads.

Within the last decade, however, motor vehicles have in various ways entered the field of common carriers, in some cases to the great financial detriment of the long established transportation systems. They have finally compelled recognition as an important factor in transportation. The first indications of recognition of their importance was legislation in nearly all the states regulating or imposing restrictions upon the operation of the so-called jitney busses; and later in the enactment of statutes regulating the operation of motor busses carrying passengers for hire over regular routes and imposing upon them conditions similar to those imposed upon other public utilities.

Such in general has been the history of the legislation in this state relating to the use of motor vehicles for the carriage of passengers

for hire over·regular routes. · In 1917, the Legislature took the first step, Chapter 254, Public Utilities, by authorizing the Highway Commission to grant permits for the operation of jitney busses, so-called, but only with a view to protecting the highways by regulating the loads and the public by regulating the speed.

In 1921, Chapter 184, the automobile had so far entered the field of common carriers that their regulation and control was vested in the Public Utilities Commission and the operation of motor vehicles on the highways of the state in such manner as to afford a means of transportation similar to that offered by street railroads and over regular routes was prohibited unless a certificate permitting such operation was first obtained from the Public Utilities Commission.

Again in 1923, Chapter 211, the law was still further extended and the operation of such motor vehicles brought more completely under the control of the Public Utilities Commission, the Commission being authorized to revoke a certificate at any time for failure to comply with any of its regulations.

And in 1925, Chapter 167, the authority of the Commission over them was still further enlarged. As the law now stands, the Legislature has vested in the Public Utilities Commission jurisdiction over all motor vehicles carrying passengers for hire and operating over regular routes, with power to establish regulations covering routes, schedules and rates of fare and safeguarding both the rights of the passengers and others using the public ways.

The Legislature has further prohibited every person, firm or corporation from using the streets and highways of the state for the operation of motor vehicles for such purposes until a certificate has been obtained from the Commission permitting such operation.

In view of the well recognized control over highways by the Legislature and of the public moneys spent in building permanent thoroughfares throughout the state and the possible menace to public safety and the rapid destruction of the road-bed by the operation of heavy, high-powered motor busses over them, the authority of the Legislature to prohibit the use of the public ways for such purposes cannot be doubted. *State* v. *Mayo,* 106 Maine, 62; *State* v. *Phillips,* 107 Maine, 249.

This brings us to the question of the legislative intent in vesting in the Public Utilities Commission the issuing of "certificates per-

Vol. 125—6

mitting such operation." Was this provision intended as a mere requirement of registration or as vesting in the Commission a quasi judicial discretion?

Similar legislation appears to have been enacted in nearly all the states. In many, the issuing of such certificates is prohibited, except as based upon public convenience and necessity, as in case of other public utilities when seeking to establish themselves, especially in a competitive field. Such certificates have come to be known as "certificates of necessity and convenience." In no case, of which we are aware, have such certificates been viewed as a provision for registration.

The contention of the petitioner here is that since no such provision basing the issue of such certificates upon public convenience and necessity expressly appears in our statute, the issuing of the certificate is a mere ministerial act and the object solely one of registration in order that the Public Utilities Commission may be apprised of those who are subject to its control under the Act.

We cannot assent to this view. The design and scope of these Acts is much broader than that contemplated by such a construction. In view of the history and apparent purpose of such legislation, both here and in other states, the end sought could not be attained by construing the provision in question as intended merely to secure registration and as compelling the issuance of such a certificate upon request, and as of right. Such a construction would permit the operation of as many motor busses, of whatsoever size and power, as chose to apply for a certificate over the same route to the obvious inconvenience of the rest of the traveling public, endangering its safety and measurably increasing the wear and tear on the highways used and their consequent depreciation and early destruction; and would also result in the anomalous situation of compelling the Commission to issue on demand a new certificate to a company, a certificate of which it had just revoked for refusal to comply with its regulations.

We are, therefore, of the opinion, in view of the general trend of legislation on this subject, that the legislative intent as expressed in these several acts was, instead of limiting the Public Utilities Commission in issuing such certificates to instances only where public convenience and necessity required, to vest in the Commission a broader discretion, having in view not only the necessity and convenience, but the general welfare of the public.

This court also approves the construction by the court below in holding that the phrase, "certificate permitting such operation" itself signifies something other than a mere ministerial act and indicates rather a voluntary assent after due consideration of the public needs and welfare.

If the Legislature had intended this provision solely for the purpose of securing registration of motor busses, we cannot conceive its being couched in the terms found in the statute. If more was intended, then it must involve a large measure of discretion.

No abuse of discretion appearing either on the part of the Public Utilities Commission in refusing to issue a certificate or of the court below in refusing to issue the peremptory writ of mandamus, or any erroneous ruling of law on which the court's decree was based, the exceptions must be overruled.

*It is so ordered.*