## RAILROAD COMMISSION OF TEXAS v. SHUPEE.

### No. 7781.

Court of Civil Appeals of Texas. Austin.

Jan. 11, 1933.

Rehearing Denied Feb. 1, 1933.

James V. Allred, Atty. Gen., T. S. Christopher, Ass't. Atty. Gen., and J. W. Wheeler, of Austin, for appellant.

Hart, Patterson & Hart and Hardy Hollers, all of Austin, for appellee.

BLAIR, Justice.

As preliminary and to avoid undue repetition of the rules of law applicable it may be stated that this case and the cases of Railroad Commission et al. v. T. M. Winkle (Tex. Civ. App.) 57 S.W.(2d) 287; Railroad Commission v. T. M. Winkle (Tex. Civ. App. No. 7865) 57 S.W.(2d) 285; Railroad Commission et al. v. George A. Scott Truck Line (Tex. Civ. App.) 57 S.W.(2d) 293; Railroad Commission et al. v. Jacob T. Bradberry (Tex. Civ. App.) 57 S.W. (2d) 294; Railroad Commission et al. v. R. M. Rogers (Tex. Civ. App.) 57 S.W.(2d) 294, and Railroad Commission et al. v. Inter-City Forwarding Company (Tex. Civ. App.) 57 S.W. (2d) 290, involve the same or similar questions and are determinable by the same general principles of law. That is, in each appeal a particular order of the Railroad Commission relating to the right to use the public highways for the operation of either motor busses or motor trucks for hire is attacked as being either unlawful, or as being unreasonable and unjust to the complainant; and in each appeal there is involved either the construction of the similar appeal sections of the Motor Bus Act (section 17, Acts 1927, c. 270 [Vernon's Ann. Civ. St. art. 911a, § 17]) and the Motor Carrier Act (section 20 [Vernon's Ann. Civ. St. art. 911b, § 20]) to determine the meaning of the term "unreasonable and unjust," as used in the acts; or the application of the same general principle of law on which the court acts in determining on such statutory appeal whether the particular order of the commission complained of is "unreasonable and unjust" within the meaning of that term as used in the appeal sections of the acts, and particularly the application of these general principles of law in determining the sufficiency of either the pleadings or proof necessary to show that the particular order complained of is unreasonable and unjust as to complainant. We have, therefore, chosen this case, which will be referred to in each of the other appeals as the Shupee Case, in which to write the initial opinion; and the principles of law herein announced will be applied to the particular facts in each appeal where it is possible to do so.

This suit arose as an appeal by appellee from an order of the Motor Bus Division of the Railroad Commission denying his application for a "certificate of convenience and necessity" to operate a bus line between the cities of San Antonio and Fort Worth by way of certain intermediate towns and cities. The commission denied the certificate upon the sole ground that "a public necessity for such operation does not exist." On his appeal to the district court appellee alleged that this order of the commission was unreasonable and unjust as to him, because "not sustained or justified by facts" adduced on the hearing of his application before the commission. And further, as particular facts showing a public necessity for the bus line and as establishing that the order was unreasonable and unjust as to him, appellee alleged that in his application for the certificate he alleged in substance that two routes existed over which bus lines could operate between the cities of San Antonio and Fort Worth, the first route being through New Braunfels, San Marcos, Austin, Georgetown, Belton, Waco, Hillsboro, and other intermediate points; and that this route is a frequently traveled highway and upon which a number of bus lines now operate. That the second route, appellee's proposed route, passed through Johnson City, Burnet, Lampasas, Hamilton, Walnut Springs, Caulk, Glenrose, Cleburne, and other intermediate points, having an estimated population of about 15,000 people. That appellee's application was accompanied by a plat or map delineating the lines of existing transportation facilities over highways serving the said territory, with the names and addresses of the owners; and that his application set forth a total lack of existing transportation facilities over said route and an inadequacy of service existing between the cities of San Antonio and Fort Worth. That there was a lack of transportation facilities between the intermediate points of the proposed route, and between the intermediate points and the termini cities; and that the proposed route would shorten by 20 miles the distance between the termini cities and was less frequently traveled, thereby saving traveling time, and rendering the proposed route less dangerous than the first route. And that the highways along the proposed route were in good condition and capable of being used by busses at all times of the year; and that he attached to his application a schedule of operation and rates which he alleged were reasonably adequate to meet the needs of the territory and compensate for the operations; and that there existed a public demand and desire for such operations.

Appellee further alleged that he introduced evidence sustaining all of the aforementioned facts before the commission, and alleged that he proved on the hearing of the application with respect to the necessity of the proposed route, as follows: " * * * That said towns and communities and the officials of said counties are desirous of obtaining such service; that the highways along said route are in good condition and capable of being used by busses at all times of the year, that the use of said route will shorten the traveling time by bus between said cities of Fort Worth and San Antonio, and that traveling by said route will be less dangerous than by the route now used by bus lines between said cities."

The commission answered by a general demurrer, which was overruled, and a general denial.

A trial to the court without a jury resulted in a judgment setting aside the order

of the commission denying the permit as being "unjust and unreasonable" as to appellee; and enjoining the commission from interfering with appellee in the operation of the bus line over the route designated, except to regulate and supervise the operation as required by the statutes; hence this appeal.

The commission contends that before appellee might vacate its order denying the certificate of convenience and necessity as being unreasonable and unjust, he was required to both allege and prove specific facts showing that there was no evidence adduced on the hearing of his application to support the order denying the certificate; or that, having regard to the interests of both the public and appellee as the proposed carrier, it is so arbitrary as to be beyond the exercise of the reasonable discretion and judgment vested by the statutes in the commission to grant or deny any person or corporation the right to operate a bus line over the public highways of this state; and that the judgment of the trial court should be reversed because neither the pleadings nor the proof adduced on the appeal and trial de novo showed the existence of any such state of facts.

Appellee insists, however, that this proposition of appellant does not state the true principle on which the court acts in determining on such statutory appeal whether the order of the commission denying the certificate was unreasonable and unjust as to him, because section 17 of article 911a authorized his appeal, and because its language, that the question on appeal "shall be tried and determined as other civil causes," and that the trial "shall be de novo," and that "the burden of proof shall rest upon plaintiff who must show by a preponderance of evidence that the decision * * * complained of" is "unreasonable and unjust as to him," clearly gave the court on appeal general power and jurisdiction over all the acts of the Railroad Commission in its administration of the Motor Bus Laws, to try anew any appealable matter, and to substitute its own finding based upon a preponderance of the evidence adduced on the trial de novo for that of the commission. And based upon this construction of the appeal statute, it is the contention of appellee that he was merely required to allege on his appeal that in his application for the certificate to operate the bus line, he alleged, and on the hearing thereof before the commission proved, a public necessity for the proposed bus line; and to allege on the appeal and prove on the trial de novo by a preponderance of the evidence that a public necessity did exist for the proposed bus service; and that having so alleged and proved such facts, the order was therefore unreasonable and unjust as to him, and the court was authorized to reverse or set it aside. These contentions of appellee cannot be sustained.

■■ If appellee's construction of the appeal statute is erroneous, then all of his contentions or propositions are erroneous, because they do not present the ultimate question to be determined on this appeal. We are clear in the view that appellee has erroneously construed the statute; and we construe it to mean that the court on appeal shall not interfere with the Railroad Commission or review its acts administering the Motor Bus Laws further than is necessary to keep it within the law, and to require that its orders shall be based upon evidence, and not upon an arbitrary exercise of its discretionary power and authority. In such a review of the acts of the commission on appeal the ultimate question for the court to determine is the mixed question of law and fact as to whether the commission acted within its statutory power and discretion; and it is this ultimate fact issue which the statute requires that the plaintiff shall prove by a preponderance of the evidence on the appeal and trial de novo. As applied to this case this rule would require appellee to allege and prove by the preponderance of the evidence that there was no evidence to support the order denying his application for a certificate of convenience and necessity to operate the proposed bus line; or that, having regard to the interests of both the public and appellee as the proposed common carrier for hire, it was so arbitrary as to be beyond the exercise of the reasonable judgment and discretion vested by the Motor Bus Laws in the commission to deny the certificate after a hearing.

In support of our construction of the appeal statute to mean that the court on such statutory appeal shall not interfere with the Railroad Commission or review its acts administering the Motor Bus Laws further than is necessary to keep it within the law, and to require that its orders shall be based upon evidence, and not upon an arbitrary exercise of its discretionary authority, thereby rendering its acts unreasonable, it may be observed that the act vests in the commission the broad discretionary power and authority to issue an applicant a certificate of convenience and necessity to use the public highways of this state for the operation of a motor bus line as a common carrier for hire only when and "if there exists a public necessity for such service." The act further provides that in determining whether such public necessity exists for the bus line, the commission has "the power and authority, and it is its duty" to determine as the primary question involved whether the proposed use of the highways by applicant will unreasonably interfere with the use of such highways by the general public for public purposes, which inquiry may include the condition and state of repair of the particular highways, whether maintained by state or local authority, at whose expense fu-

ture repairs are to be made, whether if not maintained entirely by the state, it would place too great a burden upon local authorities to maintain the highways with the additional traffic due to the operation of the proposed bus line, the uses to which the highways are already subjected by the general public, and any and all matters or things which might unreasonably interfere with the use of the highways by the general public. The commission shall also determine whether the services rendered or capable of being rendered by existing transportation facilities or agencies on such highways or the territory being served is reasonably adequate. The only limitation placed upon the commission's power and authority in this respect is the limitation applying only to motor bus operations and found in section 7 of the Motor Bus Act (Acts 1927, c. 270 [Vernon's Ann. Civ. St. art. 911a, § 7]), which provides that "the Railroad Commission shall have no power in any event to refuse an application for a certificate of convenience and necessity on the ground that there are existing railroad or interurban railroad transportation facilities sufficient to serve the transportation needs of the territory involved." And in addition to determining the administrative matters provided for in the aforementioned general provisions of the act, it further provides that the commission shall determine all matters and things required to be contained in the application for the certificate; and that the commission shall, after a hearing on the application, grant or deny the certificate as in its discretion and judgment may seem best and proper. And the appeal authorized by the act is only for a review of the order or decision complained of as to whether it is "unreasonable and unjust" as to the complaining party; that is, whether the commission has performed its administrative functions in accordance with the provisions of the Motor Bus Laws, and based its decision upon evidence adduced on the hearing, and not upon an arbitrary exercise of its discretionary power and authority. See chapter 270, Acts 40th Leg., p. 399, §§ 3, 6, 7, 8, 9, and 17, as amended by 1st Called Session, 41st Leg.

■ It may also be further observed in this connection that the decisions of the courts are uniform in holding that the use of the public highways of this state for the operation of a motor transportation service as a common carrier for hire is a special or extraordinary use, enjoyed not as a matter of right but as a special privilege which may be granted by the commission after a hearing on proper application, only when and "if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways." Ex parte Sterling (Tex. Sup.) 53 S.W.(2d) 294; Ex parte Phares (Tex. Sup.) 53 S.W.

(2d) 297; Box v. Newsome (Tex. Civ. App.) 43 S.W.(2d) 980, 981; Stephenson v. Binford (D. C.) 53 F.(2d) 509; Texas Motor Coaches v. Railroad Commission (Tex. Civ. App.) 41 S.W.(2d) 1074, 1077.

■ Beyond question the statutes aforementioned give the Railroad Commission the broad discretionary power and authority to determine when and if a public necessity exists for the issuance of a certificate of public convenience and necessity to operate a bus line over the public highways of this state. The term "public necessity" is not specifically defined in the act. However, the act vests the commission with the broad power and authority "to ascertain and determine under such rules and regulations as it may promulgate," and after considering all the statutory conditions and requirements aforementioned to grant an application for a certificate only when and "if there exists a public necessity for such service, and if public convenience will be promoted by granting said application," thus showing how completely the subject of public necessity for the operation of motor busses on the public highways has been placed within the discretionary power and authority of the commission. Woolf v. Del Rio Transportation Co. (Tex. Civ. App.) 27 S.W.(2d) 874. There is nothing in the act which contemplates that the court on appeal shall review these purely administrative functions of the commission, and the appeal section of the act in question clearly limits the court on appeal to a review of the sole question of whether the order or decision complained of is "unreasonable and unjust" as to the complainant. In view of this broad discretionary power and authority vested in the commission to issue certificates of public convenience and necessity to operate bus lines over the public highways, it necessarily follows that appellee must allege in his petition on appeal the specific fact or facts on which he relied to show that in denying his certificate the commission either transcended its statutory authority or promulgated rules; or that there was no evidence adduced to support the order; or that the commission abused its discretionary power and authority, thereby rendering the order or decision complained of unreasonable and unjust as to him within the meaning of the appeal statute.

■ Appellee does not contend that he so alleged in his petition on appeal. He concedes that his allegations to the effect that there was no evidence to support the order, and that there was a total lack of transportation facilities over his proposed route; and that the order denying his certificate was unreasonable and unjust as to him, are but conclusions, and standing alone are not sufficient. Clearly the specific allegations of fact or facts do not meet the test aforementioned. The allegations as to the inadequacy of

existing transportation facilities, together with the map and plat delineating them and attached to the application as required by the act, show in themselves a reasonable basis upon which the commission could have determined the existing facilities reasonably adequate. The allegations that because the distance was shorter over the proposed route than over the other existing route between the termini cities, and the proposed route was less frequently traveled and less dangerous does not show a public necessity, but a mere public convenience. Public convenience alone does not authorize the issuing of the certificate. There must be public necessity as well. To the same effect are the allegations with respect to existing transportation facilities between intermediate points on the route, and intermediate points and termini cities. In short, the specific allegations of the petition, viewed in their entirety, merely alleged facts upon which the application might have been granted; or question the soundness of the discretion or judgment of the commission in denying the certificate; but do not allege any facts showing an abuse of its discretionary power and authority by the commission. Or, stated another way, the allegations of specific facts merely seek to put the court in the place of the commission to try the administrative matter of refusing to grant the certificate of convenience and necessity anew as an administrative body, substituting its findings, based upon a preponderance of the evidence adduced on the trial de novo, for those of the commission.

Because of the recent enactment of the Motor Transportation Laws, our courts have not heretofore decided the exact question presented here. But numerous decisions in other states having similar public administrative bodies and laws, and in the United States courts, support our above conclusion as to the insufficiency of appellee's pleadings, and by analogy and on principle the decisions of our courts determining similar questions as to the administrative and discretionary functions of other similar public administrative boards or bodies also sustain our holding.

We will not attempt in this opinion to make an exhaustive review of the legion of authorities which discuss the principle; nor will we attempt to make an exhaustive statement of this now settled principle on which the court acts in determining on such statutory appeal whether the order of an administrative board or commission of the government is "unreasonable and unjust." In brief, they hold that where the appeal statute merely authorizes a review by the courts of the order to determine whether it is unjust, unreasonable, unfair, arbitrary, discriminatory, etc., that such statute shows "the Legislature never intended that the court should put itself in the place of the commission, try the matter anew as an administra-

tive body, substituting its findings for those of the commission." State v. Great Northern R. Co., 130 Minn. 57, 153 N. W. 247, 248, Ann. Cas. 1917B, 1201, and cases cited. They further hold that the court "will not consider the expediency or wisdom of the order, or whether on like testimony, it would have made a similar ruling." Interstate Commerce Commission v. Great Northern R. Co., 222 U. S. 541, 32 S. Ct. 108, 111, 56 L. Ed. 308, and cases cited. They also hold that "the findings of the commission are made by law prima facie true," and that courts "ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience." Illinois Cent. R. Co. v. Interstate Commerce Commission, 206 U. S. 441, 27 S. Ct. 700, 704, 51 L. Ed. 1128; Interstate Commerce Commission v. G. N. R. Co., supra; Producers' Refining Co. v. Missouri, K. & T. R. Co. (Tex. Com. App.) 13 S.W.(2d) 679; Railroad Commission v. Bass (Tex. Civ. App.) 10 S.W.(2d) 586; Gilmore v. Straughan (Tex. Civ. App.) 10 S.W.(2d) 589; Railroad Commission v. Rau (Tex. Civ. App.) 45 S.W.(2d) 413; Railroad Commission v. Weld & Neville, 96 Tex. 394, 73 S. W. 529. And further, in the case of People ex rel. New York & Queens Gas Co. v. McCall, 219 N. Y. 84, 113 N. E. 795, 796, Ann. Cas. 1916E, 1042, it is held as follows: "It was assumed perhaps, by the Legislature that the members of the Public Service Commissions would acquire special knowledge of the matters intrusted to them by experience and study. * * * It was not intended that the courts should interfere with the commissions or review their determinations further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control."

The above case went to the Supreme Court of the United States, 245 U. S. 345, 38 S. Ct. 122, 124, 62 L. Ed. 337, and that court in affirming the decision of the Supreme Court of New York said: "These administrative commissions, with large powers, were called into existence, with an organization and with duties which peculiarly fit them for dealing with problems such as this case presents, and we agree with the Court of Appeals of New York in concluding that the action of the Commission complained of was not arbitrary or capricious, but was based on very substantial evidence, and therefore that, even if the courts differed with the Commission as to the expediency * * * of the order they are without authority to substitute for its judgment their views of what may be reasonable or wise."

In the case of Modeste v. Public Utilities Commission, 97 Conn. 453, 117 A. 494, 495, where the Public Service Commission granted a certificate to operate a jitney over a specified route, the court held as follows: "Where an action of an administrative body involves

only purely administrative matters, on a statutory appeal from such a body the court has before it only the question whether the body has acted illegally or has exceeded or abused its power; otherwise the body's action, involving only an administrative matter, is final, and, in considering the question of exceeding or abuse of powers, the question as to whether its action was beyond its statutory powers or beyond its jurisdiction, or whether it had acted arbitrarily, as without notice and due hearing, are proper matters."

In the case of Chicago Motor Bus Co. v. Chicago Stage Company, 287 Ill. 320, 122 N. E. 477, 478, the court said: "Under Public Utilities Act, § 68, it is not sufficient to justify reversal of reasonable order of Public Utilities Commission made in lawful exercise of its powers, that court of review should be of opinion that order was unwise or inexpedient, but, to justify reversal on ground order was unreasonable, it must be arbitrary action not resting on reasonable basis for exercise of discretionary powers."

From the aforementioned legal conclusions with regard to the ultimate question to be determined on statutory appeals of this character, the courts have uniformly held that the petition on appeal must allege the specific facts which show as a matter of law that the order of the commission either transcended its constitutional or statutory authority; or that there was no evidence to support the order; or that the commission abused its discretionary power and authority, thereby rendering the order unreasonable and unjust within the meaning of such an appeal statute.

In the case of Gulf, C. & S. F. R. Co. v. Railroad Commission of Texas, 102 Tex. 352, 113 S. W. 741, 747, 116 S. W. 795, where the appeal was from a rate fixed by the commission, the court held as follows: "It follows that the petition must contain allegations of such facts and circumstances as would, if true, authorize the court to adjudge the rate to be unjust and unreasonable as a matter of law."

The same principle and test of sufficiency of a petition was applied in an action seeking to prevent the opening of a road by the Commissioners' Court in the case of Schlinke v. De Witt County (Tex. Civ. App.) 145 S. W. 660, 665, where it is held as follows: "The allegations that the road was not necessary, and that a better and less expensive road could have been laid out, are not accompanied with any allegations showing that the court either grossly abused its power or transcended its authority, or neglected any requirement of law. * * * The petition questions the soundness of the exercise of the discretion of the court in laying out such road, but does not allege any facts showing an abuse of its power by the court. Nothing illegal is shown by these allegations."

In the recent case of Cone Johnson v. James E. Ferguson, 55 S.W.(2d) 153, by this court, the petition seeking to enjoin the highway commission from exercising its discretionary power to estimate the probable revenue and to contract against that amount was held to be subject to a general demurrer for failure to allege that such estimated revenue as to amount was such' a palpable abuse of the discretion vested in the commission as to render its acts in that respect arbitrary or fraudulent. Like rulings have been made with respect to the discretionary power of the state superintendent of public instruction in his administration of the public school laws. State ex rel. Marrs et al. v. Abshier (Tex. Com. App.) 263 S. W. 263, and cases cited.

■ It may be further observed in this connection that the Motor Transportation Laws are largely patterned after the railroad statutes placing the railroads under the supervision and regulation of the commission. The only difference in the appeal sections of the two statutes is that the railroad statute provides that "the burden of proof shall rest upon the plaintiff who must show by clear and satisfactory evidence" that the particular decision, rate, etc., complained of is unreasonable and unjust as to him; while the motor transportation statute provides that "the burden of proof shall rest upon the plaintiff who must show by the preponderance of evidence" that the particular decision, rate, etc., complained of is unreasonable as to him. The manifest difference in these statutes is only as to the quantum of proof necessary on the respective appeals, and does not affect the principle on which the court acts in determining whether the order is unreasonable and unjust as to complainant, which rule is the same in each appeal. That is, each of these appeal statutes is construed with reference to the particular statutes to which each relates, and merely requires that the court must first judicially determine whether the complainant has introduced evidence of such probative force or value, or of such character or quantum, as will satisfy the statutory burden placed by each statute upon the complainant; and when the court has judicially determined such matter favorably to complainant, then to proceed with the trial of any fact issue as in ordinary trials on a preponderance of the evidence. Brackenridge v. Roberts, 114 Tex. 418, 267 S. W. 244, 270 S. W. 1001; Reinhardt v. Nehring (Tex. Com. App.) 291 S. W. 873; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238, and Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 115, 145 S. W. 573, 580, where it is said:

"The foregoing statute so guards the commission from improper interference that the courts must regard its actions, when within the limits of its delegated powers, as being the result of a purpose to do justice be-

tween all parties, and as having resulted in just and correct action until it be shown by clear and satisfactory evidence to be otherwise. R. R. Commission v. Weld & Neville, 96 Tex. 409, 73 S. W. 529. The language 'clear and satisfactory evidence' limits the power of courts in setting aside rates, etc., to cases in which it may be established by evidence which leaves no reasonable doubt in the judicial mind that the rate or rule is unjust and unreasonable. Willis v. Chowning, 90 Tex. 617, 40 S. W. 395, 59 Am. St. Rep. 842. It is true that this attributes to the work of the Commission a high degree of verity; but it is the plain language of the law, and is no doubt a wise provision.

"It is not within the language nor the spirit of the law which authorizes the courts to review the action of the Railroad Commission that any court should investigate the methods adopted by the commission in fixing its rates, nor the motives or purposes which prompted such action. The result and its effect upon the rights of railroads and shippers mark the limit of judicial inquiry."

So, in view of the aforementioned construction of like or similar appeal statutes to the one in question, and in view of the aforementioned principle on which courts act in determining the ultimate question to be decided on such appeals, we have reached the conclusion that the court erred in not sustaining the general demurrer to appellee's petition, because it failed to allege any facts showing an abuse of the discretionary power and authority of the commission to deny his application for a certificate to operate his proposed bus lines.

The evidence on the appeal and trial de novo was also insufficient to establish the order complained of to be unreasonable within the meaning of the appeal statute, when tested by the rule that the findings and orders of the commission are made by law prima facie true, and that the reviewing court on such statutory appeal cannot substitute its judgment for that of the commission and disturb its findings or orders where there is any substantial basis in evidence for them; or where its rulings are not capricious or arbitrary, but are, reasonable and lawful. 42 C. J. 692, and cases there cited. This rule would require appellee to prove on the appeal facts showing as a matter of law that a public necessity existed for his bus line, or to at least prove that the order denying its operation, because no public necessity existed for it, was without substantial foundation in the evidence adduced on the hearing of the application before the commission. This he did not do.

The record shows that three public hearings were held by the commission on the application of appellee for the certificate of convenience and necessity to operate the proposed bus line, one at Fort Worth, another at San Antonio, and the last one at Austin. That on these hearings numerous witnesses gave opinions as to the existence or nonexistence of a public necessity for the bus line. That there was before the commission several petitions of citizens living on the proposed route in which they say that "there is now no direct bus line between our respective cities to either Fort Worth or San Antonio, and in our opinion, one is badly needed to accommodate the travel." Manifestly these opinions cannot be substituted for the opinion of the commission as to the nonexistence of a public necessity for the proposed route.

There was also in evidence before the commission a map and plat delineating the existing route and bus operations between the termini cities through Austin, Waco, and other intermediate points, and delineating bus operations which in some instances run over the same route proposed by appellee, and showing bus operations through most of the towns and villages on the proposed route which connect with the existing first route described at Austin and other points. There was no evidence that the services being rendered by the existing bus lines through Austin and other points were in any respect inadequate as to traffic between the termini cities; nor that the connecting bus operations through most of the towns on the proposed route were inadequate in any respect. At most appellee's evidence both before the commission and on appeal merely showed that as between the termini cities his proposed route was some few miles shorter than the existing route through Austin, and that his route was less frequently traveled by the public, and from which fact he concludes that his proposed route would be less dangerous. Manifestly these matters merely show a public convenience for the proposed route, but not a public necessity for it. A public convenience alone does not authorize the issuance of the certificate, but there must also be a public necessity for the route within the meaning of that term as used in the statutes.

There was also some evidence before the commission and on appeal as to the state and repair of the highways over which the proposed bus line was to operate. Briefly, it showed some character of state designation of the entire route by the highway commission, but that only a part of it was entitled to state maintenance by the highway department, the remainder to be maintained by local county authorities through which the route passed. And while the evidence showed the proposed route passable at all times, it was admitted by appellee on his hearing before the commission that at least one part of the route was hard to negotiate by automobile in wet weather. A maintenance engineer for the state highway department testified that while the entire route proposed by appellee was well graded and passable at all times,

still it had "sections of caliche that are hard formations, and sections of black dirt that get soft in wet weather * * * and cut up very badly"; and that there was very little hard-surfaced road on the entire route. Appellee proposed to operate daily four eighteen passenger sedan coaches over the proposed route. This operation would in consequence add to the burdens upon these highways and would necessarily result in injury to them; interfere with their primary use by the public generally, endanger and inconvenience the public in their use of these highways; and would increase the tax burden for their maintenance. And as to the permanency of the proposed route, appellee showed the population of the intermediate towns over a distance of 317 miles to be about 15,000; and testified that in his opinion the traffic on the route would pay, but that actual operation would establish this. No effort was made to show the probable traffic over the route; but the evidence shows it to be sparsely populated territory as compared with the first existing route through Austin, which parallels the proposed route at a distance not to exceed 100 miles at any point.

The evidence above detailed did not establish the existence of a public necessity for the proposed route as a matter of law. But manifestly it shows a substantial basis for the order denying the certificate upon the ground that no public necessity existed for the proposed service. Especially is this true when the evidence is viewed in the light of the fact that the power or authority thus exercised by the commission is administrative power or authority vested in it by the Motor Bus Act. In the enactment of these statutes the Legislature was faced with the necessity of adequately regulating motor bus traffic for hire over the public highways of this state in the interest of safety, convenience, and necessity of the public; and of protecting the highways for public use, and the maintenance of safe and dependable motor bus transportation over the public roads or highways. It therefore vested in the Railroad Commission the exclusive power to determine the administrative matter of when and if a public necessity exists for a proposed bus line. This necessity must necessarily be established from facts and circumstances existing in the territory to be served, the commission being required by the statutes to consider of prime importance the interest of the general public in the public highways; the declared policy of the state as to their use to carry on motor vehicle transportation by individuals or corporations for hire; the existing motor bus transportation facilities serving the particular territory; the state and repair of the particular highways; and whether the proposed operation will unreasonably interfere with the use of the highways by the public for public purposes. Upon these matters and facts the statutes provide that the commission shall draw its own conclusions and form its own opinions as to the existence of a public necessity for a proposed bus line; and that when it has so found and concluded, its order shall be final, except upon a showing on appeal that its order was unreasonable as to complainant within the meaning of the appeal statute as above interpreted. And as supporting this general rule for determination of the question of public convenience and necessity the authority, 42 C. J. 687, § 12, reviews the decisions in other jurisdictions and states the rule to be as follows:

"The convenience and necessity which the law requires to support the public service commission's order for the establishment or extension of motor vehicle transportation service is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals, and this is the primary matter to be considered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect. The necessity for the proposed service must be considered as well as the added convenience thereof, although the word 'necessity' is not used in this connection in the sense of being essential or absolutely indispensable, but in the sense that the motor vehicle service would be such an improvement of the existing mode of transportation as to justify or warrant the expense of making the improvement.

"In determining what constitutes public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect, the public service commission may properly take into consideration the element of danger involved by the use of heavy trucks and passenger cars on highways, the adequacy of the service rendered the same territory by other carriers, if any, and also the ability of applicant adequately to render the service needed."

We find no Texas decision construing this discretionary power and authority of the commission to determine after a hearing when and if a public necessity exists for a proposed bus line. Courts of other states have construed similar statutes to ours favorably to our above conclusions. And in view of this being the initial case discussing the questions presented, we take the liberty of quoting at length from some of these decisions.

In discussing similar statutes the Supreme Court of Florida held, in the case of Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1631, 131 So. 777, 783, as follows: "The purpose of the statute is not only to regulate the use of the public highways by motor vehicles for compensation, but, in order to conserve the public roads and the safety of the traveling public thereon, to exclude from the use of the public highways in the state any and all motor vehicles operated for compensation, except such

motor vehicles as are affirmatively shown to be required to serve the 'public convenience and necessity.' Public highways are maintained by taxation primarily for public use of individuals for themselves; and the use of such highways by motor vehicles for hire is permitted only when and as the 'public convenience and necessity' may require it. Public convenience alone does not authorize the issuing of a certificate. There must be public necessity as well."

The Supreme Court of Ohio, in the case of Canton-East Liverpool Coach Co. v. Public Utilities Comm., 123 Ohio St. 127, 174 N. E. 244, 245, held as follows:

"The record discloses that all the territory has transportation service; that the additional service would be a convenience to occasional persons who might desire to travel from one point within the state to another point within the state—such a convenience as no doubt exists in every territory, along every public road, private road, and byway within the state.

"Of course, it must be conceded that every additional transportation service in every territory, where people live or where people go, may reasonably be expected to be at some time a convenience to some one, and probably to many; and the Legislature must have known that any public transportation operation, anywhere within the state, would be a convenience to some degree to the inhabitants of its territory and to the persons desiring to go into or out of such territory. The Legislature, however, was not attempting to make a certificate to operate available to every one who might apply, but was attempting to regulate the number of operations, the places of operation, and the character of the operation; and so it provided that, before a certificate could issue, not only a convenience but a necessity for such operation should exist. Of course, by reason of the diversity of conditions existing in different territories, that which might be a necessity in one territory would be only a convenience in another. For instance, in a congested center where it is difficult to move the volume of traffic over available avenues, anything which tends by through or diverting service to speed the traffic, or relieve the avenues of a portion of the burden of traffic, might in that situation be a necessity, but would not be a necessity at all in a less populous district.

"Perhaps it will not do to give to the word 'necessity' its literal meaning and hold that, before a certificate can issue, there must be an absolute requisite for a motor transportation service; but it must not be wholly devitalized by interpreting it as synonymous with convenience. Necessity, perhaps, in its reference to transportation facilities, may best be construed as contemplating a definite public need for a public transportation service in a territory where no reasonably adequate public service exists. It does not contemplate that every prospective customer may have a nonstop service from the point where he becomes a passenger to the point of his destination, nor that he may have an air line between such points, but only that the public generally, of every territory sufficiently populous to justify the maintenance of a public transportation, shall have reasonably adequate service."

The Supreme Court of Maine, in the case of Maine Motor Coaches, Inc., v. Public Utilities Comm., 125 Me. 63, 130 A. 866, 867, used the following language:

"In view of the well-recognized control over highways by the Legislature and of the public moneys spent in building permanent thoroughfares throughout the state, and the possible menace to public safety, and the rapid destruction of the roadbed by the operation of heavy, high-powered motor busses over them, the authority of the Legislature to prohibit the use of the public ways for such purposes cannot be doubted. * * *

"We are therefore of the opinion, in view of the general trend of legislation on this subject, that the legislative intent, as expressed in these several acts, was, instead of limiting the Public Utilities Commission in issuing such certificates to instances only where public convenience and necessity required, to vest in the commission a broader discretion, having in view not only the necessity and convenience, but the general welfare of the public."

In the case of Eager v. Public Utilities Commission of Ohio, 113 Ohio St. 604, 149 N. E. 865, we find the following expression: "In this class of cases a party is entitled to bring his cause here for determination upon the weight of the evidence, and this court will inquire whether the finding and order of the commission lacks such proof as to render it unreasonable and unlawful, but it does not follow that, because all the evidence was offered by the party complaining, and each of his witnesses gave testimony that in his opinion public necessity and convenience required motor transportation service, thereby that fact was established. The public convenience and necessity, or lack thereof, is established by proof of the conditions existing in the territory to be served, and it is the function of the commission to draw its own conclusion and form its own opinion from the proof of the conditions in the territory, rather than from the consensus of opinions of witnesses upon the ultimate fact as to the existence or nonexistence of the public necessity and convenience."

In accordance with our foregoing holdings, we reverse the judgment of the trial court setting aside the order of the commission complained of, and dissolve the injunction granted herein by the trial court.

Reversed and injunction dissolved.