**MERCHANT'S FAST MOTOR LINES, INC.** et al., Appellants,

v.

**RED BALL MOTOR FREIGHT, INC.,** Appellee.

No. 10639.

Court of Civil Appeals of Texas.

Austin.

Feb. 25, 1959.

Will Wilson, Atty. Gen., Morgan Nesbitt, Asst. Atty. Gen., Smith, Robinson & Starnes, Austin, for appellants.

Looney, Clark, Mathews, Thomas & Harris, Thomas E. James, James H. Keahey, Austin, for appellee.

GRAY, Justice.

This appeal is from a judgment setting aside an order of the Railroad Commission granting an amended certificate of public convenience and necessity and enjoining all operations under it.

On July 24, 1957 Merchant's Fast Motor Lines filed with the Commission its application to amend its existing certificates of public convenience and necessity so as to authorize service over an alternate route:

"Between Aspermont, Texas, and Childress, Texas, over U. S. Hwy 83, serving no intermediate points, with joinder of this authority at the termini so as to render a through service over this route and the authorized routes joining at said termini, coordinating the service with that under other authority."

At a hearing before the Commission Red Ball Motor Freight, Inc. appeared as a protestant and on January 16, 1958 the Commission entered its order granting the application. Red Ball filed exceptions and its request for oral argument. On February 26, 1958 an order overruling the exceptions and denying the request for oral argument was entered.

Red Ball appealed from the Commission's order and at a nonjury trial the trial court set the order aside and permanently enjoined all operations under it.

Findings of fact and conclusions of law were not requested and none were filed.

Merchants and the Commission have appealed from the trial court's judgment and here present five points. These are to the effect that the trial court erred in holding the Commission's order void and in enjoining all operations under it because: the judgment is not supported by any evidence; contrary to the appellee's allegations, the application was sufficient to invoke the Commission's jurisdiction as to all points to be served by Merchants including Amarillo, Waco, Houston and San Antonio; contrary to appellee's allegations, the orders reflect the grounds upon which the Commission acted and contain all necessary findings including findings of the inadequacy of existing services, the existence of a public necessity for the proposed services and that the public convenience will be promoted by granting the application; contrary to appellee's allegations, the Commis-

sion's findings are reasonably supported by substantial evidence, and the trial court erred in refusing to admit in evidence and to consider offered testimony.

Appellee joins issue with appellant on the above points and in opposition thereto presents five counterpoints which in effect are that the judgment of the trial court should be sustained because: under the evidence the Commission's order is void; appellee's application was not sufficient "to invoke the jurisdiction of the Commission as to service between Houston, San Antonio and Waco on the one hand, and, on the other, Amarillo;" the Commission's orders are void "because they failed to set forth 'full and complete findings of fact pointing out in detail the inadequacies of the service and facilities of the existing carriers and the public need for the proposed service,'" the Commission's orders are void because there was no substantial evidence, and no evidence to support them, and the offered testimony was properly excluded.

Red Ball and Merchants are common carrier motor carriers, and though Red Ball does not serve all points served by Merchants they are competitors in the area. Red Ball serves Childress but not Aspermont.

Merchants operates under certificates of public convenience and necessity authorizing it to transport general commodities to and from numerous named cities and towns in Texas. Its general offices are at Abilene with some thirty six terminals including those at Houston, Waco, San Antonio, Abilene and Amarillo. It offers a daily coordinated service between all points it is authorized to serve, this, however, is not a one day delivery service. Abilene is generally the center of Merchant's system of routes and as shown by the map attached to the application this system of routes may be described as bounded on the north by Wichita Falls and Amarillo, on the east by Houston, Waco and Dallas, on the south by San Antonio and on the west by El Paso.

Shipments moving to or from Amarillo to or from points on Merchant's existing system of routes move through Wichita Falls. Childress and Aspermont are points on Merchant's existing system of routes but with joinder only via Wichita Falls. Childress lies between Wichita Falls and Amarillo and Aspermont lies generally south from Wichita Falls and between Abilene and Amarillo. With the exception of shipments moving to and from Amarillo, Wichita Falls, Fort Worth and Dallas, about which there appears to be no controversy here, it appears other shipments over Merchant's existing routes and moving to or from Amarillo would move to Abilene, thence to Wichita Falls and then to Amarillo and vice versa. The proposed Childress-Aspermont route would shorten the distance from Amarillo to Abilene 104 miles one way or 208 miles on a round trip with a resulting savings in operating costs and delivery time.

The Commission found that the proposed alternate route would improve the slow, cumbersome and unsatisfactory service between Amarillo, Abilene and numerous other cities and towns in the Abilene trade territory because of two-line hauls and circuitous routes and would meet the public need for an improved service, and further found:

"* * * that the use of the proposed alternate route would be financially impractical for the applicant to operate if the applicant be authorized to use the alternate route for some of its traffic and forbidden to use the alternate route in moving other traffic, depending on its origin or destination; and that to restrict the use of the proposed alternate route in such a way would, in effect nullify the effect of this order. The Commission finds, therefore, that the public necessity and convenience requires the grant of the authority applied for by the applicant in its entirety, without any restrictions."

Under Merchant's existing authority shipments originating in Waco, Houston and San Antonio and destined for Amarillo would move to Abilene, but whether an interchange of shipments along any route prior to reaching Abilene is required is not necessary to be here noticed because the amended certificate does not alter such requirement. Further, shipments originating in Amarillo and destined for either of the above points moves to Abilene under either Merchant's existing authority or under the amended certificate. Thus Abilene is a fixed point of passage for shipments over Merchant's routes fixed by its existing authority or by its amended certificate, the only difference being in the movement of shipments from Abilene to Amarillo and vice versa. The order in question simply authorizes "a through service over this route and the authorized routes joining at said termini, coordinating the service with that under other authority."

Appellee says that the order of February 26, 1958 is void because it was not the act of the Commissioners acting as a body and relies on the law as announced in Webster v. Texas & Pac. Motor Transport Co., 140 Tex. 131, 166 S.W.2d 75.

In its brief appellee says:

" * * * that the trial court's judgment is correct for the reason that the order of February 19, or 26, or March 4 was invalid because it was not the act of the Commission meeting and acting as a body."

There is in the record before us an order introduced in evidence at the trial as plaintiff's exhibit 6. This order in parts reads:

"Austin, Texas
"Mar. 4, 1958

"Order

"By the Commission:

"On February 19, 1958, the Railroad Commission of Texas took up for consideration the exceptions of Red Ball Motor Freight, Inc., protestant, to the order of the Commission dated January 16, 1958, and the request of the protestant for oral argument."

Also there is an order which in part reads:

"Austin, Texas
"February 26, 1958

"Order

"By the Commission:

"On February 19, 1958, the Railroad Commission of Texas took up for consideration the exceptions of Red Ball Motor Freight, Inc. protestant, to the order of the Commission dated January 16, 1958, and the request of the protestant for oral argument."

The above orders are identical except for dates. Both recite the action taken by the Commission on February 19. The date "Mar. 4, 1958" appearing on exhibit 6 supra is explained as being the date that the order of the Commission is received by the Motor Transportation Division and is mailed to the parties.

February 26, 1958 appears to be the date of the order in question and is the date of the order attached to appellee's petition as an exhibit.

Appellee relies principally on the testimony of Bryan Bell, Director of the Motor Transportation Division, O. D. Hyndman, Secretary of the Commission, and Mrs. Peggy Petropoulos, Secretary to Commissioner Culberson, to show that the Commission did not act as a body on February 19.

The witness Hyndman testified that it was his duty to keep the official minutes of the Commission; that his minutes do not show any meeting held by the Commissioners during the week beginning February 17, 1958 and ending February 21, 1958. He testified:

"Q. Mr. Hyndman, have you got present in the Courtroom the official minutes of the Railroad Commission of

Texas as maintained in your office covering the period of time January and February, 1958? A. Yes, part of February. Not all of February is included in it as yet.

"Q. Does it—do the minutes which you have here with you extend down through the date February 24, 1958? A. I believe that she has just begun 19—February 24, 1958, Mr. Mathews. This heading will show—

"Q. Now, when you say 'this heading,' are you referring to the official minutes of the Railroad Commission of Texas? A. Yes, sir.

"Q. At Page— A. 292.

"Q. For the year 1958? A. For the year 1958.

"Q. Yes, sir. And do you have a heading there that shows that there has been at least one entry for February 24, 1958?" A. There has been no entry.

"Q. Are you down to the place where February 24, 1958, would begin? A. Yes, sir.

"Q. In order that I may be clear, are your minutes there, then, typed up from February 1 through February 23, 1958? A. Right, yes, sir."

He said that he kept a calendar for his own personal use; that it showed that on February 19 only Commissioner Thompson was present; that he did not attend conferences of the Commission and is not officially notified of them. He said that he did not know of his own knowledge whether the Commissioners held a conference on February 19.

Mrs. Petropoulos testified that she was instructed to keep a record of the Commissioners present each day; that she kept such a record and that it showed that on February 19 Commissioners Thompson and Murray were present and that on February 26 Commissioners Culberson and Murray were present. She also testified that her records showed that on February 19 Commissioner Culberson was in Houston the entire day.

The witness Bell testified that he did not know whether the Commissioners acted together on February 19 or whether they acted individually.

Appellants objected to the testimony of the above witnesses because the issue that the order was not the act of the Commission was not raised by the pleadings. The objection was overruled.

In the trial court appellee had the burden of proving that the order of February 26 was invalid. Sec. 20 of Art. 911b, Vernon's Ann.Civ.St.

The witnesses Hyndman and Bell said they did not know whether the Commissioners acted together on the 19th or not. They further said that their records were kept partly from their own inquiries and partly from other sources. The calendars kept by the witnesses Hyndman and Petropoulos are of equal dignity (except the one kept by Mrs. Petropoulos was kept by direction) because there is no showing that one was more accurate than the other and they are in conflict as to the number of Commissioners present on February 19.

There is no evidence that Commissioner Culberson did not have notice and knowledge of the disposition made of the pending exceptions and request for oral argument. In fact there is evidence that he did have such knowledge because there is in evidence the following notation in longhand appearing on Commissioner Thompson's copy of the exceptions and request for oral argument:

"To Commission: I suggest that this request be denied. The case has been heard and decided. The restrictions herein requested would nullify the grant. Ernest O. Thompson. * * *

"Agreed, Olin Culberson."

This notation also bears the initials "W. J. M." with a further notation: "To the Motor Transportation Division."

, The above notations are not dated, however, they were in existence on February 19 because the witness Bell testified: "I received it down from the Commission office on February 19, 1958." This witness also testified as to another exhibit that the initials "W. J. M." represents Commissioner William J. Murray. He further testified that the normal procedure for the disposition of action taken by the Commissioners is that an order is prepared by the examiner who heard the case for their signatures.

■ The evidence does not show that the Commissioners did not act as a body in overruling appellee's exceptions and request for oral argument and, in any event, it does not show that a quorum was not present with notice and knowledge to the absent member of the action taken. Railroad Commission of Texas v. Jackson, Tex., 299 S.W.2d 266.

■ Appellee says that Rule 50 of the Rules of Procedure and Practice before the Commission was violated in that the order of February 19 was made on Wednesday instead of on Monday. The exceptions and request for oral argument were matters pending before the Commission and the rule simply provides that the Commissioners, or a quorum thereof, will confer formally with the Director and the Examiners of the Motor Transportation Division on Monday of each week at 8 o'clock A.M. "or as soon thereafter as practical" and will receive reports and recommendations and will act thereon. We think the action shown is not sufficient to constitute a fatal violation of the rule.

■ Appellee did not allege that the complained of order was not the act of the Commission but alleged that its exceptions and request for oral argument were "duly" overruled. It did allege that the order was invalid but for reasons other than for the failure of the Commissioners to act as a body. This being the state of the pleadings and in view of appellants' objections to the evidence supra the judgment of the trial court cannot be sustained on the ground that the Commissioners did not act as a body because that ground was not pleaded. Carter v. Old Faithful Mut. Fire Ins. Co., Tex.Civ.App., 243 S.W.2d 215.

Merchant's application was to amend its certificate of public convenience and necessity so as to authorize service between Childress and Aspermont over Highway 83 with a joinder of the proposed service at the termini so as to render a through service over the proposed route and other authorized routes joining at said termini, and coordinating the service with that under other authority. The map attached to the application shows that Merchants serves Houston, San Antonio, Waco and Amarillo. The fact that service to and from these cities is rendered by Merchants under existing authority is not disputed. The application was for authority to join services over the proposed route with other authorized routes joining at the termini of the new route. We cannot say that services to or from Waco, Houston, San Antonio and Amarillo are not authorized under existing authority over routes joining at the termini of the proposed route. Further the application does not seek to amend existing authority for service to those points but seeks a new route from Childress to Aspermont and vice versa so as to render a through service over that route and the authorized routes joining at "said termini."

■ There were no exceptions filed to the sufficiency of the application at the hearing before the examiner under Rule 28, Rules of Practice and Procedure, before the Commission nor any complaint of the admission of any evidence beyond the scope of the allegations of the application. Rule 38. We think the application was sufficient to invoke the jurisdiction of the Commission.

■ The Commission found that the existing common carrier service is slow, cumbersome and unsatisfactory because of two-line hauls and circuitous routes and further found that the proposed alternate route will meet the public need for an improved service. Thus the Commission found that the existing services were inadequate and unsatisfactory and pointed out the inadequacies as being slow, cumbersome and unsatisfactory and also found that the proposed service would meet the public need for an improved service. These findings are all that the Commission was required to make. Sec. 5a(d) of Art. 911b, supra. This statute requires only that:

"The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service."

The order was sufficient to meet appellee's objections because it found that there were inadequacies in the services rendered by existing carrier, pointed out such inadequacies and found that the proposed service would meet the public need for an improved service.

In Merchants Fast Motor Lines v. Newman, 236 S.W.2d 646, 648, Er.ref., n. r. e., this Court held that Sec. 5a supra is applicable only to "Specialized Motor Carriers."

Appellee's counterpoint three cannot be sustained on the grounds alleged.

The order in question is quoted supra. We have also said that shipments moving to and from Amarillo (Fort Worth and Dallas excepted) would move over the most direct route, via Wichita Falls and Abilene. The order coordinates the proposed service with existing authority and thereby authorizes shipments to move over the shorter route, via Aspermont, Childress to Amarillo and vice versa instead of via Wichita Falls with the restriction that service to intermediate points (between Aspermont and Childress) is not authorized.

■ The evidence shows that existing authorized service to and from Amarillo affords a second day or later delivery of shipments and that the proposed alternate route would afford an overnight transportation and early morning delivery of shipments to and from Amarillo.

Appellants offered the testimony of some 68 witnesses. Their testimony may be generally summarized as stating that the existing services were inadequate to meet the existing public need for the proposed service; that the proposed service would be used and that it would supply a public convenience and business need to business in the affected area.

Witnesses [1] testified to the need for an improved service to and from Houston, Waco and other points in the area served.

Red Ball admits that Merchant's is authorized to serve Amarillo, San Antonio, Houston and Waco via Abilene and Wichita Falls but objects to the proposed improved service. It says that the existing service between those points is not shown to be inadequate and further says that the proposed route would further increase competition for traffic and would impair Red Ball's ability to maintain its schedules of service.

■ We think the order is reasonably supported by substantial evidence. The question of whether there is a public need for an improved service is for the Com-

---

1. A dealer in farm implements and parts; a grocery man; a dealer in emergency repair parts for use in the oil and gas industry; a dealer in plumbing, heating and air conditioning equipment, and a shipper of engine repair parts and other commodities.

mission and the fact that such improved service may or may not result in hardships to competitive carriers is also a matter to be considered by the Commission in the exercise of its discretion in deciding whether the hardship resulting from the competition is more than offset by the convenience and necessity of the public served. Texas Motor Coaches, Inc. v. Railroad Commission of Texas, 123 Tex. 517, 73 S.W.2d 511. In this cause the opinion of the Court of Civil Appeals, 59 S.W.2d 923, was affirmed. There at page 926 the Court of Civil Appeals said:

"The commission should, and is so directed by the statute, take into consideration the effect that granting competitive service between the same termini would have upon the continued ability of existing motorbus carriers to render and continue an adequate service, commensurate with public convenience and needs; and should so act as to protect the public interest. If public convenience and need outweigh, as the trial court and the commission found in this case that it did, the private interests of those already in the field, the latter become subservient to the former, and must abide the result even though it involve financial loss. All these things, and the weight to be given them, were matters within the scope of the powers delegated to the commission to determine; and, unless the commission abused its discretion in the conclusions reached, the courts are not at liberty to set aside the result. Texas Motor Coaches v. R. R. Comm. (Tex. Civ.App.) 41 S.W.2d 1074, 1078; Railroad Com[mission of Texas] v. Shupee [Tex.Civ.App., 57 S.W.2d 295], supra; Mayor, etc., of City of Houston v. Houston St. Ry. Co., 83 Tex. 548, 19 S.W. 127, 29 Am.St.Rep. 679; section 5, art. 10, Texas Constitution [Vernon's Ann.St.]. And this is true where the use of the same highway is involved."

It is our opinion that appellant's points 2, 3 and 4 must be sustained and for which reason it is not necessary for us to consider point 5.

The judgment of the trial court is reversed, and judgment is here rendered dissolving the injunction and sustaining the order of the Commission.