**SPROLES MOTOR FREIGHT LINES, Inc., et al. v. RAILROAD COMMISSION et al.**

No. 11290.

Court of Civil Appeals of Texas. Galveston.

Dec. 11, 1941.

Rehearing Denied Jan. 15, 1942.

Thompson & Barwise, of Ft. Worth, Terry, Cavin & Mills, of Galveston, R. S. Shapard and C. C. Huff, both of Dallas, Herbert L. Smith and A. G. Walker, both of Austin, Clem Calhoun, of Amarillo, Rawlings & Sayers, Frank H. Rawlings, and Nelson Scurlock, all of Ft. Worth, and Baker, Botts, Andrews & Wharton and John T. Maginnis, all of Houston, for appellants.

H. G. Woodruff, of Decatur, for appellee Eli Morgan.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus and Glenn R. Lewis, Asst. Attys. Gen., for appellee Railroad Commission.

GRAVES, Justice.

This suit was instituted by various Texas common motor-carriers, various Texas Railroads, and the Railway Express Agency, Inc., the appellants herein, as a direct attack against an order of the Railroad Commission of Texas, dated November 22, 1939, granting its common-carrier motor-carrier certificate No. 3063 to Eli Morgan, one of the appellees herein, authorizing the operation of a common-carrier service to and between places named in such order, that is:

"From Dallas, Texas, to Rhome via State Highway No. 114, from Rhome to Bowie via State Highway No. 2, United States Highway No. 81, Bowie to Henrietta via State Highway No. 50, Henrietta to Amarillo via State Highway No. 5, United States Highway No. 370; from Wichita Falls to Burkburnett via State Highway No. 30, Wichita Falls to Byers via State Highway No. 66, State Highway No. 79; Wichita Falls to Olney via State Highway No. 79; Olney to Decatur via State Highway No. 24; Breckenridge to Dublin via State Highway Nos. 67 and 187, and United States Highway No. 80; Grapevine to Abilene via State Highway No. 121 to Fort Worth, thence to Cisco via United States Highway No. 80, and Breckenridge to Abilene via United States Highway No. 80-A; from Abilene to Ballinger via State Highway No. 4; from Fort Worth to Stephenville via United States Highway No. 377; thence to San Angelo via United States Highway No. 67; from Coleman to Rising Star via State Highway No. 206, and from Cisco to Brownwood via State Highway No. 23, United States Highway No. 283"; also to set aside and annul the common-carrier certificate issued to Eli Morgan under that order, as well as to enjoin and restrain any and all operations under the order.

The trial of the case was on its merits before the court, without the intervention of a jury, on the 19th day of February, 1941, and on that day judgment was rendered against appellants, affirming and sustaining the Commission's order of November 22 of 1939, to which action of the court the appellants in open court excepted and gave notice of appeal.

The only question of law posed for this court on the review is, did the District Court of Travis County err in deciding that the Railroad Commission had been justified in so granting the appellee this certificate on November 22, 1939?

That single inquiry is simplified by reference to prior relations between these parties leading up to the authorization of the certificate; this was the appellee's second request for a hearing on his application for it, as against these appellants, his first one having been denied by a tentative order of the Commission on October 4 of 1938, these appellants being then the protestants thereof, as thereafter they likewise were against this one; on November 1 of 1938, the Commission granted appellee's motion for a rehearing of that first denial of such a certificate to him, giving him opportunity to present further evidence before that Body on his application therefor, whereupon appellants sued him in the district court of Travis County, seeking to set aside as wholly void the Commission's order granting that rehearing, as well as to restrain it from exercising any further jurisdiction over his application therefor, or from issuing any orders or certificates in connection therewith. The result of that litigation is re-

ported in Sproles Motor Freight Line v. Smith, Tex.Civ.App., 130 S.W.2d 1087, 1088, writ of error denied.

■ That decision, thus having the approval of the Supreme Court, is the law of this case, except as to whether or not the later hearing so resulting in the granting of this certificate on November 22 of 1939 was held in compliance with the rules of law there laid down. It ended with this declaration: " * * * we must assume that the Railroad Commission, in accordance with its order granting the motion for rehearing, will, in keeping with these decisions, set same down for further hearing at a designated date, and notify the interested parties accordingly."

This record discloses that the Commission did fully comply with that direction, and, after granting the appellee such a rehearing, set his new application down for a designated date, giving advance notice thereof to both sides here; that it then heard in evidence all matters either desired to present, following which the order now at bar was entered.

So that, there is nothing before this court, except to determine whether or not the record of this last rehearing justified the Commission in granting the certificate this time, upon its many stated findings, a controlling one of which was that changed conditions since the refusal of the former permit had made that both permissible and advisable.

■ Despite appellants' reiterated contention that the order and its entailed certificate were "illegal and void" because there was no evidence of any such changed conditions, or other justification for its action, and that the Commission, in determining otherwise, considered records, files, and other matters of fact not in evidence before it, this court is unable to so read the statement of facts; on the contrary, the undisputed testimony of the witness Woodruff alone, introduced at this last hearing, was to the effect that most of the highways enumerated supra, over which the appellee would have to travel under his permit, had been, since October 4, 1938, not only rebuilt, but highly improved, especially during the few months next preceding such final hearing; and, further, to the effect that, as to the portion of the roads that had not already been so treated, contracts had been let for the improvement of them, and, when that work had been completed, as therein provided for, these roads also would, within a short period, be put into like first-class condition.

■ Not only so, but the most applicable statutes, R.S.Articles 911b, sections 8 and 9, Vernon's Ann.Civ.St. art. 911b, §§ 8, 9, expressly confer upon the Commission the right to also inquire into the financial ability of the applicant for such a certificate as this one, as well as the condition of the roads over which the service is to be rendered, the necessity for it, and all other matters shown to·be germane to that inquiry.

Wherefore, on this phase of the controversy, it may be conceded that had there been no evidence that conditions had in any way changed between the dates of the refusal of the first certificate and the granting of the second, the Commission would have been without authority of law to grant the latter. It follows, too, it is thought, that the array of authorities from other jurisdictions, cited and relied upon by the appellants in support of their propositions asserting such to be the law, became academic when undertaken to be applied to the state of facts so obtaining here; this for the reason that our statutes on this subject are not only of a distinctive and different character from the ones applied in those cases, but have been so ruled upon with direct application to this very case.

■ Moreover, the challenged order of November 22 of 1939, after reciting that the prior October 4 of 1938 one refusing the permit should be set aside, then fully stated the Commission's findings and the facts upon which they were based in support of its new order granting the certificate, in what appears to this court to be at least a substantial compliance with our statutory law, R.S.Article 911b, section 12; however, in doing so it did not set out all of the evidence upon which that action was based, nor was that incumbent upon it; but it does undisputedly appear that, at the time it entered the order of November 22, 1939, granting the application, it had before it the evidence of all prior hearings (Exhibits 2A, 2B, 2C, and 2D), and, in addition, its general orders, the record of. a. general hearing on conditions of highways and density of traffic thereon, all of which it might consider, as a basis for its order granting this application. Railroad Commission v. McDonald, Tex.Civ.App., 90 S.W.2d 581;

Shupee v. Railroad Commission, 123 Tex. 521, 73 S.W.2d 505.

Neither does the certificate granted authorize the appellee to operate his trucks at an illegal speed, in the circumstances, of more than 40 miles per hour, as appellants insist; indeed, it does not specify nor authorize any given speed per hour at which he may operate them, its recitation in that respect being merely that, permissively, he might transport loads for hire not to exceed 3,000 pounds, on trucks weighing up to 5,000 pounds.

 However, had the permit allowed him to so operate his trucks at a higher speed than the law permitted, it is not perceived that that circumstance would have rendered the permit void, because in no event could he have operated his trucks at a rate that was prohibited by statutes of the state.

In any event, however, that objection is now moot, in view of the enactment of House Bill No. 77, section 1, Acts of the 47th Legislature of Texas, 1941, Vernon's Ann.P.C. art. 827a, § 8, permitting motor vehicles hauling commodities such as is proposed by appellee for hire, to operate at a speed of 45 miles per hour.

Appellants further object that this certificate did not comply with R.S.Article 911b, section 10, in that it did not contain a schedule of the rates to be charged for the service rendered. In that behalf, his application contained this provision with reference to the rate: "That the rates proposed to be charged by the transportation of property between the several points to be served are to be present railway express rates."

In other respects it further specified that what he sought permission to carry was packages not exceeding 50 pounds in weight, and that the charges to be made therefor were, as so specifically indicated, the rates then being charged by the Railway Express Company. That is certain which can be made certain, and it follows that these rates were susceptible of precise ascertainment by merely referring to the rates prescribed by R.S. Article 3861, which had already been promulgated by law as governing the charges for carriage by express. Furthermore, the express rates also being under control of the Commission, it might take knowledge of them in determining what should be done in that respect as to the rates of carriage under these common-carrier motor permits. See R.S.Article 911b, section 22b.

Since this appellee was thus to carry these small packages of a maximum of 50 pounds down from one small town to another, or from the start to the end of his specified routes, according to the weight of the package and the distance to be carried, the schedule of rates being then charged by the Railway Express for like or similar business, as so fixed and published by the Railroad Commission itself, eliminated all uncertainty.

It is the conclusion of this court that, no invalidating vice in the challenged order of the Commission having been pointed out, the trial court's judgment should be affirmed. It will be so ordered.

Affirmed.