### MERCHANTS FAST MOTOR LINES, Inc. et al. v. NEWMAN et al.

No. 9940.

Court of Civil Appeals of Texas. Austin.

Feb. 7, 1951.

Rehearing Denied Feb. 21, 1951.

Rawlings, Sayers, Scurlock & Daly, by Reagan Sayers, Scranton Jones, all of Fort Worth, for Merchants Fast Motor Lines, Inc.

J. T. Suggs, Dallas, Kenneth McCalla, Walter Caven and Austin L. Hatchell, all of Austin, for Texas & Pac. Ry. Co. and Texas & Pac. Motor Transport Co., Intervenors.

648

Price Daniel, Atty. Gen., Charles E. Crenshaw, Asst. Atty. Gen., for Railroad Commission of Tex.

Benton L. Templeton, Abilene, Tex., for Newman Motor Fr. Lines.

Smith, Rotsch & Steakley, by Herbert L. Smith, Austin, and Nelson, Montgomery & Robertson, by Otis E. Nelson, Jr., Wichita Falls, for Miller & Miller Fr. Lines.

HUGHES, Justice.

This suit was brought by Merchants Fast Motor Lines, Inc., against J. H. Newman, certain named persons doing business as Miller and Miller Freight Lines, and the Texas Railroad Commission.

The Texas and Pacific Railway Company and the Texas and Pacific Motor Transport Company intervened and are aligned with the plaintiff.

The purpose of the suit was to invalidate and enjoin the enforcement of an order of the Commission granting Newman additional authority as a regular common carrier of commodities by motor vehicle.

A nonjury trial resulted in a judgment sustaining the validity of the challenged order and decreeing that plaintiff and intervenors take nothing by their suit.

No request for findings of fact or conclusions of law was made, and none were filed.

The first point made by appellants, plaintiff and intervenors, is the "Error of the court in failing to find the order complained of as void for failure to meet the mandatory procedural requirements of statute."

This point is far too general to require our consideration; nevertheless, we will consider it.

The first contention under this point is that the following portion of Sec. 14(b), Art. 911b, Vernon's Ann.Civ.St., was not observed by the examiner who conducted the hearing for the Commission: "* * * after the hearing of an application has been concluded by such representative or Examiner, it shall be his duty promptly to make a written report to the Commission recommending disposition of said application. Such report and recommendation shall be accompanied by a brief narrative statement of the evidence, and shall contain such other information as such representative or Examiner may think advisable, or as may be required by the Commission."

It appears that the examiner during the hearing took longhand notes of the evidence and that shortly after the hearing he conferred with the Commission concerning entry of the orders here attacked. He then had with him the longhand notes and made use of them in reporting to the Commission the state of the evidence and in recommending the order which he thought should be made. The failure of the examiner to put this recommendation in writing is the only dereliction noted.

█ We consider such requirement of the statute to be made for the benefit and convenience of the Commission and a requirement which the Commission may, as it apparently did here, waive.

█ We are further of the opinion that such requirement of the statute is directory only, noncompliance with which will not, in the absence of injury, invalidate an order of the Commission.

The next objection urged under this point is that the Commission did not comply with Sec. 5a(d), Art. 911b, V.A.C.S., providing that: "* * * The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. * * *"

This statutory provision is taken from an act of the Legislature passed in 1941 [1] pertaining to "Specialized Motor Carriers", who are, generally speaking, common carrier motor carriers operating over irregular routes on irregular schedules with special equipment and carrying certain commodities. Nevertheless, some of the pro-

1. Acts 47th Leg., Reg.Sess., p. 713.

visions of this Act, including the one above quoted, are made applicable to "other common carriers."

Appellees direct our attention to the following provisions of Sec. 12(a), Art. 911b: " * * * After hearing and such investigation as the Commission may make, it shall be the duty of the Commission to grant or refuse the application, and, in any contested hearing, the Commission shall, along with its order, file a concise written opinion setting forth the facts and grounds for its action, and such opinion shall be admissible as evidence on any appeal taken therefrom; upon request of any party at interest in a contested hearing of any nature, the proceedings shall be taken down and reported by a reporter under the direction of the Commission."

This provision is taken from an act of the Legislature passed in 1931,[2] regulating the transportation of property over the highways of this state for compensation by common carriers and contract carriers.

■ "Specialized Motor Carriers" was created as a separate class of common carrier motor carriers,[3] and, in our opinion, Sec. 5a of the 1941 Act is applicable only to specialized motor carriers as therein defined.

Our reasons for this holding are: (a) the reference to "other common carriers" is too general. Specifically it does not include Motor Bus Companies regulated under Art. 911a, V.A.C.S. Kerrville Bus Co., Inc., v. Continental Bus System, Tex. Civ.App., 208 S.W.2d 586 (Austin Writ Ref.N.R.E.) and authorities therein cited. It does not include taxicabs. Foster v. Railroad Commission, Tex.Civ.App., 215 S.W.2d 267 (Austin). Not included also is the common carrier "jitney." Art. 6548a, V.A.C.S. Other common carriers such as railroads and pipe line companies are regulated by special statutes, and to include them in the reference to other common carriers would at least be inappropriate. (b) While sub. (e) of Sec. 4 of the 1941 Act makes holders of and applicants for specialized motor carrier permits subject to

the Act relating to common carriers by motor vehicle, there is no provision in the 1941 Act repealing any other law. (c) Other decisions have held, or at least suggested, that in testing the sufficiency of regular route common carrier motor carrier orders Sec. 12(a), supra, and not Sec. 5a(d), supra, should be applied. See Sproles Motor Freight Lines v. Railroad Commission, Tex.Civ.App., 157 S.W.2d 949 (Galveston Writ Ref.W.O.M.), Railroad Commission v. McDonald, Tex.Civ.App., 90 S.W.2d 581 (Austin), and Central Freight Lines v. Sadler, Tex.Civ.App., 147 S.W.2d 1102 (Austin Writ Ref.Cor.Judg.).

■ We believe that the Commission has substantially complied with Sec. 12(a), supra, and has filed a concise written opinion, setting forth the facts and grounds for its action in the premises.

The application upon which the attacked order was based does not appear in the record, however it is described as being an application of J. H. Newman, d.b.a. Newman Motor Freight Lines, to amend common carrier certificate No. 2756, so as to authorize additional motor carrier service between Abilene and Throckmorton via Albany, over State Highway 351 from Abilene to Albany, and over U. S. Highway 183 from Albany to Throckmorton, rendering a daily overnight service each way and coordinating this new service with all service then being rendered by Newman.

The authority so requested by Newman was granted, except that the following restrictions were made: Newman was prohibited from serving Breckenridge out of Abilene and Albany, and from serving Albany out of Abilene and Breckenridge, and likewise prohibited from serving Abilene on freight originating at Wichita Falls.

The authority previously possessed by Newman and carried forward in the amended certificate was to operate:

"From Wichita Falls to Breckenridge via Archer City, Olney, New Castle, Graham, South Bend, and Ivan over State Highways 79, 251, 24 and 67; and from New Castle to Throckmorton over State

2. 42nd Leg., Reg.Sess., p. 480.

3. Sec. I of the 1941 Act.

Highway 24; and from Olney to Graham over an unnumbered county road via Jean, serving all intermediate points, but prohibited from serving Jean; and from Olney to Throckmorton via Elbert and Padgett; and from Breckenridge to South Bend via Eliasville over State Highway 67 and a county road.

"The carrier is restricted from serving Breckenridge by interchange or otherwise on shipments originating at Fort Worth or Dallas; and the carrier is also restricted from soliciting, picking up, and transporting shipments originating at Breckenridge destined to Fort Worth and Dallas."

In the Commission order, dated February 10, 1950, granting Newman's application to amend Certificate No. 2756, the following findings were made:

"The Commission further finds from the evidence and its own records that satisfactory proof has been made of the financial responsibility of the applicant; that the equipment proposed to be used in said operation meets the requirements of the laws of the State of Texas in regard to safety devices, dimensions, etc.; and that the highways designated in the application are of such type of construction and maintenance and subject to such use as to permit the use sought to be made by the applicant without unreasonable interference with the use of such highways by the general public for highway purposes.

"The Commission further finds from the evidence and its own records and the testimony adduced at the hearing that the applicant introduced public witnesses from the towns of Abilene, Graham, Olney, Wichita Falls and Albany. The applicant is presently rendering a common carrier service under Certificates Nos. 2756 and 3588 from Wichita Falls south over Highways 79, 251 and 67 and serving such towns as Archer City, Olney, New Castle, Graham, Breckenridge and others, and also renders a common carrier service between Breckenridge and Throckmorton and Olney over Highways 6, 99 and 24, and that he proposes to coordinate his existing service with that rendered under the above-mentioned certificates. The public witnes-

ses testified at the hearing that they needed an overnight early next morning delivery service of freight originating in Abilene and destined to such points as Archer City, Olney, New Castle, and Graham, and that they presently are not receiving that type of service; that in some instances it required several days for freight originating in Abilene to arrive at these various towns. At the present time the applicant is rendering service between Wichita Falls and Breckenridge, including the town of Throckmorton, by interchange at Breckenridge, and that this service is slow and undependable; and the public witnesses testified that they needed an improved overnight early next morning delivery service at these various points between Wichita Falls and Breckenridge, particularly at such points as Olney, New Castle and Graham, and that the proposed service was needed by them in their business and would be convenient for them, and that they would use the proposed service if same were inaugurated. The applicant in filing his application and setting up his schedules imposed certain limitations and prohibitions on the service that he will render, and these limitations are as follows: The applicant is prohibited from serving Breckenridge out of Abilene and Albany out of Abilene and Breckenridge; and further prohibited from serving Abilene on freight originating at Wichita Falls. The applicant failed to prove by substantial evidence that there was a need for the proposed service on freight originating in Wichita Falls destined to Abilene."

In support of our holding that the order sufficiently set forth the facts and grounds upon which the Commission based its order, we cite the case of Central Freight Lines v. Sadler, supra, where the court upheld an order of the Commission assailed on the same grounds as those made here even though "The findings of fact quoted do not detail the testimony nor evidence, but sufficiently find the ultimate facts upon which the order or action is based * *." 147 S.W.2d loc. cit. 1111.

Here the Commission found that Newman was financially responsible; that

he had proper equipment; that the highways were sufficient; and that the proposed service was lacking but needed. This was sufficient. Victory Truck Lines v. Red Arrow Freight Lines, Tex.Civ.App., 186 S.W.2d 98 (Austin Writ Ref.W.M.).

The remaining point is that the order of the Commission is not supported by substantial evidence.

Under this point the testimony of numerous witnesses before the Commission is summarized, such summary consuming about 25 pages of the brief. The following eight pages of the brief are devoted to an abstract discussion of "the substantial evidence rule." Finally, we are informed that:

"Based upon a consideration of the evidence before the trial court (which was the same as the evidence before the Commission, with the exception of the testimony of C. S. McDonald given before the trial court only as pertains to his 'agreement' with applicant as to proposed service between Abilene and Breckenridge), it is the contention of appellants that the action of the Railroad Commission is not 'reasonably supported by substantial evidence.' The orders complained of illustrate in of themselves that it is the practice and policy of the Railroad Commission to restrict the orders of grant to that service which they deem is warranted by the record before it. The complaint of appellants is that the substantial evidence does not warrant the grant of any authority unless that authority is restricted so as to prohibit the holder of such authority from rendering any service as follows:

"(1) Handling any shipments originating at or moving through Abilene, and intermediate points between Abilene and Breckenridge, destined to Breckenridge or to be interchanged at Breckenridge with connecting line carriers for beyond movement.

"(2) Handling any shipments originating at Breckenridge or received from connecting line carriers at Breckenridge moving to or through Abilene, or intermediate points between Breckenridge and Abilene.

"(3) Handling any shipments originating at or moving through Abilene destined to or to be interchanged with other carriers at Albany or intermediate points between Abilene and Albany.

"(4) Handling any shipments originating at or received from other carriers at Albany, or intermediate points between Abilene and Albany, destined to or through Abilene.

"(5) Handling any shipments originating at or moving through Abilene destined to or through Wichita Falls.

"(6) Handling any shipments originating at or moving through Wichita Falls destined to or through Abilene.

"(7) Handling any shipments originating at or moving through Dallas or Fort Worth destined to or through Albany or Abilene.

"(8) Handling any shipments originating at or moving through Abilene or Albany destined to or through Dallas or Fort Worth.

"Appellants do not contend that the order of February 10, 1950, is invalid in its entirety, but only insofar as it does not restrict the authority granted as outlined above. There is no substantial evidence, and in some instances, no evidence at all, justifying the operations between the points mentioned in (1) through (8)."

This method of attacking an order of the Commission is unusual in that appellants' complaint is with what the Commission did not do rather than with what it did.

To understand appellants' interest in the failure of the Commission to restrict Newman's certificate as suggested by appellants it is only necessary to state that appellant Merchants Fast Motor Lines is a common carrier motor carrier with authority to transport commodities generally between Dallas, Fort Worth, Wichita Falls, Breckenridge, Albany, Abilene and other points, and that it has recently acquired the A & W Motor Lines, a similar type of carrier, operating generally between Wichita Falls and Abilene, and that appellant Texas and Pacific Motor Transport Company is a similar carrier operating generally out of Dallas through Breckenridge and Abilene to El Paso, with au-

thority to coordinate its services and schedules with the Texas and Pacific Railway Company.

We will not try to analyze the intricate restrictions which appellants demand be imposed upon appellee. Their import and effect, however, is plain. By restricting appellee's right to handle shipments originating at or moving through the various named towns and from interchanging shipments at various points, appellee would offer little competition to the services now rendered by appellants.

The legal basis for this demand is that there is either no evidence or that the evidence is insufficient to show that the present service is inadequate between the points and with reference to the service to which the restrictions would apply. For instance it is said that there is no evidence of any need for additional service between Breckenridge and Abilene.

We concede this to be true. Yet, we are not convinced that this fact mandatorily requires restrictions of such service.

■ The Railroad Commission has the right to grant and amend certificates of the character involved here upon such terms and conditions as it may impose, and this right belongs exclusively to the Commission. It may well be that the courts have authority to strike down a certificate that is arbitrary or otherwise illegal, but this does not give the courts the right to write a new certificate or to in anywise administer the motor transportation laws.

Is the present certificate to be invalidated because there is no evidence to show that the services rendered by existing carriers is inadequate over certain segments of the routes included in the certificate?

■ We are convinced that the term "adequate (inadequate) service" is not to be so narrowly construed as to require an affirmative answer to this question as applied to the facts of this case.

The primary purpose of Newman's application was to enable him to operate between Abilene and other points already served by Newman. Under this new authority Newman proposed to inaugurate two new schedules, one, daily except Sunday, leaving Wichita Falls at 7 p. m., and arriving at Abilene at 12:30 a. m., and the other leaving Abilene at 7 p. m. and arriving at Wichita Falls at 2 a. m. These new schedules, when coordinated with Newman's present schedule, would give all points served by him, except Breckenridge and Eliasville, overnight and early morning delivery service out of Wichita Falls and Abilene, the two principal cities on the Newman routes.

■ The need for and the desirability of this service is unquestioned. It was, therefore, the duty of the Commission to grant the authority requested by Newman. In the performance of this duty it was incumbent upon the Commission to so frame the grant of authority as to make it effective and this even if in so doing there resulted incidental overlapping of services on routes where additional services were not shown to be needed.

Certainly it was not the duty of the Commission, in this case, to so weigh down and cripple the additional and needed services requested, by imposing the maze of restrictions suggested by appellants.

In affirming the validity of the Newman certificate we have borne in mind the absence of any evidence showing that the grant of this additional authority to Newman would cause hardship to appellants or interfere with the services which they are now rendering.

The judgment of the trial court is affirmed.

Affirmed.