**ALAMO EXPRESS, INC., et al., Appellants,**

v.

**RAILROAD COMMISSION of Texas and Missouri Pacific Truck Lines, Inc., Appellees.**

**No. A-11012.**

Supreme Court of Texas.

Oct. 12, 1966.

Rehearing Denied Nov. 16, 1966.

Felts & Robinson, Ewell H. Muse, Jr., Austin, Rawlings, Sayers, Scurlock & Eidson, Fort Worth, James, Robinson & Starnes, Austin, for appellants.

William R. McDowell, Dallas, Clark, Thomas, Harris, Denius & Winters, Austin, Kelley, Looney, McLean & Littleton, Edinburg, Waggoner Carr, Atty. Gen., Austin, Sam L. Kelley and Hawthorne Phillips, Asst. Attys. Gen., for appellees.

POPE, Justice.

This is a direct appeal from an order of the trial court which upheld the validity of a Railroad Commission order. Article 1738a, Vernon's Ann. Tex. Civ. St. Missouri Pacific Truck Lines, Inc. applied for an amendment to its common carrier certificate which would authorize it to use an alternate route between Houston and San Antonio. It already had authority to operate between Houston and San Antonio over a route that was seventy-eight miles longer. The Commission authorized the amendment so Missouri Pacific could operate over Highway 90 with closed doors between those two termini but permitted a joinder at those termini with Missouri Pacific's authorized routes west of San Antonio and east of Houston. The trial court upheld the validity of the order and refused to enjoin the issuance of the amended certificate. Seven protesting carriers urge that the

Commission order is void because it did not comply with Section 5a(d) of Article 911b, which requires full and complete findings of fact which support the order, and also because the order is not reasonably supported by substantial evidence. We affirm the judgment of the trial court.

Section 5a(d) requires the Commission to set forth in its order full and complete findings of fact. Missouri Pacific contends that it is a regular route common carrier, that Section 5a(d) governs orders granting certificates to specialized motor carriers, but that Section 12(a) of the Motor Carrier Act governs orders on applications for regular route common carriers such as Missouri Pacific. Section 12(a) provides only that the order be accompanied by a concise written opinion. The order in question makes full findings about many matters which the protesting carriers do not attack. The findings which are attacked as too general are those set forth in the margin.[1]

1. "THE COMMISSION FURTHER FINDS FROM ITS OWN RECORDS that the termini of Houston, Texas, and San Antonio, Texas, between which the alternate route is proposed, are large and growing metropolitan areas whose growth has increased substantially over the past few years; that such growth will probably continue in the foreseeable future; that there has been and is now, not only an increase in population, industry and economic activities in said areas, but also an increase in freight tonnage moving through and between said termini and the demands for an expedited and improved common carrier service between said termini are likewise increasing.

"THE COMMISSION FURTHER FINDS from the evidence and its own records that the highways over the proposed route are greatly improved over the highways of applicant's present route between said termini; that the distance between the two termini will be shortened approximately seventy-eight miles each way over the proposed route; that applicant's use of the proposed route between said termini will provide the public a much safer, more improved and expedited service and will result in operating savings to applicant of some $22,000.00 a year.

"THE COMMISSION FURTHER FINDS from the evidence and its own records the pickup and delivery services of the existing common carriers operating between said termini, are often slow, irregular and inconsistent; that delays and inconvenience are often caused on account of two line hauls now being performed by existing common carriers moving freight to and from points located beyond each of said termini, through and over the proposed route, which points are presently served by applicant; that the proposed service will permit applicant to render later and more prompt pickups of freight at points of origin and earlier deliveries at points of destination, thereby providing a more efficient handling and movement of such freight between said termini, from consignors to consignees; that such proposed service will also permit applicant to serve many points located beyond each of said termini presently served by applicant, with direct one line hauls to and from such points, by use of the proposed route between said termini, thereby eliminating the necessity of interchange of freight at either or both of said termini; that in these respects the existing transportation facilities are not adequate or satisfactory and the public need will be better served and filled and the public convenience will be promoted by the granting of this application and permitting applicant to render the proposed service; that the granting of this application will not have any substantially adverse effect upon the operations or service of the existing common carriers presently authorized to use the proposed route and to serve the territory involved, and the public need for, and the public convenience that will be derived from, the proposed service, will outweigh any nominal competitive effect that might result to the operations of said existing carriers.

"THE COMMISSION FURTHER FINDS from the evidence and its own records, after carefully considering the existing transportation facilities and demand for and the need of the additional service, that the service and facilities of the existing carriers serving the territory are inadequate, and that there exists a public necessity for such proposed service, and that public convenience will be promoted by the granting of said application and permitting the operation of motor vehicles on the highways designated in said application as a common carrier for hire. * * *"

■ The history of the Motor Carrier Act, the construction of the statutes, and former decisions convince us that an order granting a certificate for a regular route common carrier is controlled by Section 12(a) instead of Section 5a(d). The two sections provide in part:

Section 5a(d). "The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service."

Section 12(a). "After hearing and such investigation as the Commission may make, it shall be the duty of the Commission to grant or refuse the application, and, in any contested hearing, the Commission shall, along with its order, file a concise written opinion setting forth the facts and grounds for its action, * * *."

In 1929 the Texas Legislature for the first time undertook the regulation of motor freight carriers over Texas highways. Acts 41st Leg.Reg.Sess.1929, Ch. 314, p. 698. In 1931 the Motor Carrier Act was substantially amended. Acts 42nd Leg.Reg. Sess.1931, Ch. 277, p. 480. By the 1931 Act, regular route common carriers were required to prove public convenience and necessity. Sections 8, 9, 10, 11, and 12 of the Act stated in some detail the procedures that an applicant for a certificate as a regular route common carrier must follow. Section 12(a) was a part of the 1931 Act. The 1929 and 1931 Acts authorized a class of carriers known as special commodity carriers. Such carriers operated upon irregular routes, did not have fixed schedules, transported commodities that required special equipment and were not regarded as common carriers. The requirements for applicants for special commodity permits were different from those of regular route common carrier certificates.

■ In 1941 the Legislature enacted the Specialized Motor Carrier Act. Acts 47th Leg.Reg.Sess., Ch. 442, p. 713. The purpose of the Act was to create and regulate the holders of and applicants for permits and certificates as specialized motor carriers as a new class of common carrier. The 1941 Act made substantial changes in and additions to the regulation of irregular route carriers of commodities which required special equipment. The Act contained seven sections, all of which related to special commodity carriers. Section 1 declared that the policy of the Act was "to create a class of common carrier motor carriers designated as 'specialized motor carriers.'" Section 7 of the Act said that an emergency existed because carriers of special commodities were not regulated according to the needs of the general public. In other words, the purpose of the 1941 Act was to make provisions for the regulation of special commodity carriers. The provisions for issuance of certificates to the new class appear in Section 5a, Article 911b, V.T.C.S. Procedures for applicants for certificates as regular route common carriers, found in Sections 8 through 12, Article 911b, were undisturbed and unrepealed. We see, therefore, that the procedures for the regulation of the two classes of common carriers have different legislative origins and are contained in separate sections of the Motor Carrier Act. Procedures respecting the two classes of carriers are and always have been different in many ways.

The protesting carriers' argument is that the phrase "or any other common carrier" contained in Sections 5a(c) and 5a(d) extends the more stringent requirement as to findings to regular route common carriers. Such a construction would require an implied repeal of Section 10 of the Motor Carrier Act, and would leave the procedure for applications and hearings for regular route common carriers in confusion. Sections 5a(c), 5a(d) and 10 must be examined. They, with italics added, are:

"5a(c). The Commission shall have **no jurisdiction to consider**, set for hear-

ing, hear, or determine any application for a certificate of convenience and necessity authorizing the operation of a 'specialized motor carrier' or *any other common carrier* except as provided in the preceding paragraph unless the application shall be in writing and set forth in detail the following facts:

"1. It shall contain the name and address of the applicant, who shall be the real party at interest, and the names and addresses of its officers, if any, and shall give full information concerning the financial condition and physical properties of the applicant.

"2. The commodity or commodities or class or classes of commodities which the applicant proposes to transport and the specific territory or points to, or from, or between which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use.

"3. It shall be accompanied by a map, showing the territory within which, or the points to or from or between which, the applicant desires to operate, and shall contain a list of any existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application.

"5a(d). Before any *such application* shall be granted, the Commission shall hear, consider and determine *said application* in accordance with Sections 8, 9, 11, 12, 13, 13a, 14, and 15 of Chapter 277, Acts of the Forty-first Legislature, Regular Session, as amended (Article 911b, Revised Civil Statutes of the State of Texas, 1925, as amended), and if the Commission shall find any *such applicant* entitled thereto, it shall issue certificate hereunder on such terms and conditions as is justified by the facts; otherwise *said application* shall be denied. The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' *or any other common carrier* unless it is established by substantial evidence (1) that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting *said application*. The order of the Commission granting *said application* and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. Likewise, the Commission shall have no authority to grant any contract carrier application for the transportation of any commodities in any territory or between any points where the existing carriers are rendering, or are capable of rendering, a reasonably adequate service in the transportation of such commodities."

"Sec. 10. No application for a certificate of public convenience and necessity shall be considered by said Commission unless it be in writing and set forth the following facts:

"(1) It shall contain the name and address of the applicant and the names and addresses of its officers, if any, and shall give full information concerning the financial condition and physical properties of the applicant.

"(2) The complete route or routes over which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use.

"(3) A proposed schedule of service and a schedule of rates to be charg-

ed between the several points or localities to be served.

"(4) It shall be accompanied by a plat or map showing the route or routes over which the applicant desires to operate, on which plat or maps shall be delineated the line or lines of any existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application."

In spite of the broad and inclusive statement in Section 5a(c) that an application by any common carrier must include the information stated, the only construction which will avoid confusion is one that makes the provision applicable to all common carriers except those provided for in another unrepealed section of the Motor Carrier Act. The more reasonable construction of the whole act, therefore, is that an applicant for a special commodity certificate must comply with Section 5a(c) and an applicant for a regular route common carrier certificate must comply with Section 10. Section 5a(c) requires information which is material to special commodity carriers, but it omits important matters which are essential to regular route carriers. Section 10, on the other hand, requires information which is vital to regular route carriers but is immaterial to special commodity carriers. Neither section purports to satisfy the requirements of all common carriers. Each describes a different kind of common carrier.

Section 5a(c) states that an application must set forth, among other matters, the commodity or commodities which the applicant proposes to transport, the territory in which the applicant desires to operate, and a map showing the territory or points between which the applicant desires to operate. The section requires information suitable to an irregular route carrier. It

has no requirements that the application show the routes, schedules of service and schedules of rates. That information is relevant to and required of an applicant for a regular route common carrier. Section 10, Article 911b. Section 5a(c), in context with the whole act, states the requirements for an application for common carriers that do not operate over regular routes and on fixed schedules. Section 10 states the requirements for regular route common carriers.

Section 5a(d) repeatedly uses the terms "such application," "said application," and "such applicant." The section immediately follows Section 5a(c), and the sense of the phrases is that they refer to the kind of an application discussed in the immediately preceding Section 5a(c). That would be an application for a special commodity certificate, and not an application for a regular route common carrier certificate. Moreover, Section 5a(d), after referring to the application required by 5a(c), in its first sentence shows that in most respects "such application" will be considered in the same way as one for a regular route common carrier but that the application itself shall be different. The sentence states that "the Commission shall hear, consider and determine said application in accordance with Sections 8, 9, 11, 12, 13, 13a, 14, and 15 * * *" of the Motor Carrier Act. Section 10 is omitted. This shows that "such application" as used in Section 5a(d) refers to the kind of application described in Section 5a(c), but not the kind described in Section 10. The phrase refers to an application for special commodity carriers and not to one for a regular route common carrier.

The second sentence in Section 5a(d) broadly applies to "any application * * * as a 'Specialized Motor Carrier' or any other common carrier * * *." The sentence, however, concerns the measure of proof which all carriers must meet. It requires all classes of common carriers to prove the inadequacy of service, public necessity and public convenience, and to do so

by substantial evidence. Regular route common carriers were already required to meet that standard of proof and the 1941 Act was making clear that all carriers from that time forward would be required to prove their applications by substantial evidence. That sentence does not, however, depend upon or refer to Section 5a(c). The next sentence is: "The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service." The sense of the sentence from all of Section 5a(d) is that the words, "said application" are used for the same purpose as they were used four other times in the same section, to refer to the application to operate as a specialized motor carrier as described in the preceding Section 5a(c).

This Court has previously held that orders which grant certificates to specialized motor carriers must comply with Section 5a(d) and must fully and completely state the findings of fact. Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.Sup. 1963); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951); Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951). On the other hand, several opinions of the Courts of Civil Appeals have held that Section 5a(d) does not govern orders concerning regular route common carriers but that Section 12(a) does. Merchant's Fast Motor Lines, Inc. v. Red Ball Motor Freight, Inc., 322 S.W.2d 35 (Tex. Civ. App. 1959, writ ref. n. r. e.); Railroad Commission v. Herrin Transportation Co., 262 S.W. 2d 426 (Tex. Civ. App. 1953, writ ref. n. r. e.); Merchant's Fast Motor Lines v. Newman, 236 S.W.2d 646 (Tex. Civ. App. 1951, writ ref. n. r. e.).

This Court delivered its opinion in Hovey on February 7, 1951, and its opinion in Thompson on May 9, 1951. Those cases concerned specialized motor carrier certificates and the Court required compliance with Section 5a(d). In March of 1951, between the time that those cases were decided, Merchant's Fast Motor Lines v. Newman was pending in this Court on application for writ of error. The contention was made in that application that Section 5a(d) also governed regular route common carriers. Merchant's Fast Motor Lines filed a supplemental petition and cited Hovey in support of the point. On May 16, the Supreme Court refused the writ with the notation, no reversible error. Although the Court had just decided that Section 5a(d) required orders for specialized motor carriers to be supported by full and complete findings, it did not disturb the clear holding by the intermediate court that Section 12(a) governed regular route common carriers.

The protesting carriers rely upon Miller v. Railroad Commission, supra, and language contained in Alamo Express, Inc. v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815 (1958). Those cases concerned specialized motor carriers, and under any construction, were governed by Section 5a(d). Neither case presented the issue that is now before this Court. The protesting carriers also rely upon Miller, Thompson, and Hovey, cited above, as authority for striking down the order for its generality. Even applying the rule of those cases, the order here in question would not be governed by those decisions. In Miller, the finding of fact was embodied in a single sentence, which was clearly inadequate. In Thompson, the order contained a recital of the evidence but no findings of fact from the evidence. In Hovey, railroads as well as motor carriers protested the grant of additional authority to an applicant. The order found that an inadequate number of tank cars were furnished by the railroads but wholly failed to find that an inadequate number of tank trucks were furnished by the protesting motor carriers. It was a case of no finding at all upon the material issues. We conclude,

therefore, the order of the Commission must be tested by Section 12(a) and that it met that test.

 We regard the Commission's grant of the alternate route to Missouri Pacific as the grant of new authority. Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957). It is our opinion also that the order is reasonably supported by substantial evidence of the inadequacy of existing services and that public convenience and necessity will be served by the new authority. The record in the case is voluminous with more than three thousand pages in the statement of facts in addition to numerous documents. Eleven carriers serve points on Highway 90 between San Antonio and Houston in addition to Missouri Pacific whose service was along another but more circuitous route between those termini. Thirty-five shippers and receivers of freight between the two termini testified that the existing service was inadequate and unsatisfactory. Their complaints about the companies already serving the route were many. Some carriers were unable to perform single-line services or overnight services. The witnesses testified that existing carriers refused to pick up shipments or failed to pick them up. There were complaints of damages and loss to shipments, failure to furnish equipment, faulty equipment, and failures to make deliveries when required. These and other complaints were expressed by a large number of the heaviest shippers between the two termini.

Extensive economic data showed the growth of the two termini. Data about populations, the number of manufacturing establishments, the number of employees, the number of retail establishments, and the increase in sales per year showed that the industrial and commercial development at the two termini has outdistanced the transportation services afforded. No new motor carrier authority has been granted since 1954. Since that time the markets have expanded four or fivefold.

The protesting carriers urge that the testimony is general in nature, shows preferences and desires of shippers rather than material inadequacy and need. They also urge that the applicant must prove that each of the eleven existing carriers is affording inadequate service. Missouri Pacific's brief has catalogued the testimony in so far as it applies to inadequacy of services presently afforded by each of the carriers that appealed as well as five other carriers that did not protest the application. From the entire record, we conclude that the Commission's order is reasonably supported by substantial evidence.

The judgment of the trial court is affirmed.

STEAKLEY, J., dissents to this opinion.

STEAKLEY, Justice (dissenting).

I respectfully dissent.

Missouri Pacific Truck Lines, Inc., the trucking subsidiary of Missouri Rail Lines, applied to the Railroad Commission for a certificate of public convenience and necessity to operate as a common carrier motor carrier between Houston and San Antonio over U. S. Highway 90, serving no intermediate points, with joinder of this authority so as to render a through service over Highway 90 between other points on other routes which Missouri Pacific is presently authorized to serve. Missouri Pacific presently serves Houston and San Antonio over a circuitous route from Houston and Navasota over Farm-to-Market roads 149 and 1174, from Navasota to Hearne over State Highway 6, from Hearne to Round Rock over U. S. Highway 79, from Round Rock to Austin over an unnumbered county road and U. S. Highway 81, and from Austin to San Antonio over U. S. Highway 81. It also serves points beyond Houston and San Antonio such as Beaumont, Orange, Baytown, Galveston, Texas City and Freeport east and south of

Houston, and Crystal City, Cotulla, Laredo and Jourdanton west and south of San Antonio. The joinder and coordination authority sought by Missouri Pacific would authorize an operation over U. S. Highway 90 between Houston and San Antonio in transporting shipments to and from these "beyond" points. The Railroad Commission authorized the proposed new service by granting the application in all respects. Its order is quoted in the majority opinion.

Seven of the ten common carrier motor carriers presently authorized to operate over U. S. Highway 90 between Houston and San Antonio protested the granting of the application to operate over this route and between these points and are appellants. Carriers serving the "beyond" points are also appellants. Two problems are presented. The first is whether the order is void under Section 5a(d) of Art. 911b[1] because of the failure of the commission to "set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service." Sec. 5a(d), later quoted in full, provides that the order of the Commission shall be void unless it does so. The question is whether the provisions of Sec. 5a(d) apply to the application of Missouri Pacific; if so, I regard it as self-evident under our decisions that the commission order does not comply with the requirements of the statute. See Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.Sup.1963); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951).

The second problem is whether the order of the Commission is reasonably supported by substantial evidence. This question is to be separately resolved with respect to the motor carrier operation authorized between Houston and San Antonio over U. S. Highway 90, serving no intermediate points, and with respect to the additional joinder and coordination authority.

The Texas Motor Carrier Act, Article 911b, was originally enacted in 1931.[2] It was substantially amended in 1941.[3] The statute defines and regulates two classes of motor carriers. These are common carriers who serve the public and contract carriers who serve a limited number of contracting shippers. The common carriers are of two types. The regular route carrier serves the public in the transportation of commodities generally over regular certificated highway routes and on regular schedules. The specialized common carrier serves the public in the transportation of special commodities over irregular routes and on irregular schedules. In statutory principle, the specialized carrier transports commodities with physical characteristics and/or origins or destinations beyond the services of the regular route common carrier. The specialized carrier is not limited to named highways but may operate on all highways within its area of authorized operation and the service of this carrier is often described as a call and demand service.

The 1941 amendment to the Texas Motor Carrier Act expressly refers to and includes in its coverage all motor carriers. Its title or caption carries notice that the statute provides "[T]he jurisdiction and procedure of the Commission in granting applications for certificates of convenience and necessity to specialized motor carriers *and other common carriers and contract carrier permits.*"[4] Section 5a(c) provides that: "The Commission shall have no jurisdiction to consider, set for hearing, hear, or determine any application for a certificate of convenience and necessity authorizing the operation as a 'specialized motor carrier' *or any other common carrier* except

---

1. The statutory references are to Vernon's Annotated Revised Civil Statutes of Texas.

2. Acts 1931, 42nd Leg. p. 480, ch. 277.

3. Acts 1941, 47th Leg. p. 713, ch. 442.

4. Emphasis is added in all instances.

as provided in the preceding paragraph unless the application shall be in writing and set forth in detail the following facts: * * *." Section 5a(d) provides that:

"The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' *or any other common carrier* unless it is established by substantial evidence (1) that the services and facilities of the existing carrier serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application. The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. Likewise, the Commission shall have no authority to grant *any contract carrier* application for the transportation of any commodities in any territory or between any points where the existing carriers are rendering, or are capable of rendering, a reasonably adequate service in the transportation of such commodities."

Prior to the 1941 amendment Section 12 (a) of Article 911b required the Railroad Commission to "file a concise written opinion setting forth the facts and grounds for its action" in granting or refusing an application for a certificate of convenience and necessity.

Section 3 of Article 911b prohibited the operation of any motor carrier as a common carrier except under the provisions of a certificate of public convenience and necessity issued "pursuant to a finding to the effect that the public convenience and necessity require such operation."

Section 8 of Article 911b placed upon the Railroad Commission the mandatory duty of determining an application for a certificate of public convenience and necessity, as follows:

"The Commission is hereby vested with the power and authority, and it is hereby made its duty upon the filing of an application for a certificate of public convenience and necessity to ascertain and determine under such rules and regulations as it may promulgate, *after considering existing transportation facilities,* and the demand for, or need of additional services, if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways designated in such application as a common carrier for hire."

It is clear to me that the requirements of the 1941 amendment to the Texas Motor Carrier Act are intended to be cumulative of the previous and existing statutory requirements. No other interpretation can reasonably be placed upon the language in Section 5a(c) and (d) "a 'specialized motor carrier' or any other common carrier" together with the reference to "any contract carrier application." It is correct, as the majority points out, that there may be some difficulties in fitting the 1941 amendment into certain other unamended sections of the 1931 Act not here involved. But this often happens and the provisions of the statutes are to be harmonized if possible but where not, the conflicting provisions of the older statute are repealed by implication. I do not think we are authorized to ignore legislative purposes represented by express inclusive language in order, as the majority says, to "avoid confusion." Actually, there will be much less than the majority appears to fear and wants to avoid and none of the anticipated confusion is involved here.

I recognize that some persuasiveness may be given the action of this Court in refusing the application for writ of error in Merchants Fast Motor Lines v. Newman, 236

S.W.2d 646 (Tex.Civ.App.1951, writ ref. n. r. e.), contemporaneously, in effect, with the decisions of this Court in Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951), and Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951). But in my view *Newman* is wrong, and we should say so.

Of like seriousness to me is the generalized disposition by the majority of the problem of whether the order of the Commission with its twofold grant of operating rights to Missouri Pacific—a new service between Houston and San Antonio over U. S. Highway 90, and coordination of this new route with existing authority—is reasonably supported by substantial evidence. As previously noted, under Section 3 of Article 911b no operation as a common motor carrier is authorized except under a certificate of public convenience and necessity which, in turn, can be issued by the Commission only "pursuant to a finding to the effect that the public convenience and necessity require" such operation. Related to this requirement of Section 3 is the additional requirement of Section 12(a) that the Commission "file a concise written opinion setting forth the facts and grounds for its action" in granting or refusing an application for a certificate.

Apart from the question of the findings required by Section 5a(d), previously discussed, the findings of the Commission in an order granting a certificate of public convenience and necessity chart our course in resolving the question of whether the order is reasonably supported by substantial evidence. As grouped by Appellees in their brief, the findings of the Commission in the order under review relate to three classifications: "(a) The growth and economic development; (b) The condition of the highways; and (c) The evidence as to services." I take it for granted that no one would seriously contend that evidence of the growth and economic development of Houston and San Antonio, and the existence of improved highways would constitute substantial evidence that the public

convenience and necessity require a proposed new motor carrier service. Indeed, the Legislature has expressly provided in Section 5a(d) that "[t]he commission shall have no authority to grant *any* application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' or any other common carrier unless it is established by substantial evidence (1) that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application." Perhaps the majority would say that we can again ignore express language of Section 5a(d). But even if we can, it must be acknowledged that the crucial consideration in resolving the question of public convenience and necessity in a proposed motor carrier operation—alternate route, or otherwise—is the adequacy or not of the services of the existing authorized carriers. This means all of the existing carriers and not just some of the existing carriers. To say otherwise would ignore every intendment of Article 911b, enacted in 1931, and as subsequently amended. This Court approved the opinion in Railroad Commission of Texas v. Red Arrow Freight Lines, Inc., 96 S.W.2d 735 (Tex.Civ.App.1936, writ ref'd). This, too, was an alternate or reroute proposal. The Court said:

"Under the conclusions we have reached, the controlling question the appeal presents is whether in substance and effect Lawler's application was one for a certificate of convenience and necessity which required a showing by him and a finding by the Commission that the territory was not adequately served by existing facilities, and that additional facilities or service were required and would be secured by granting his application." Id. at 737.

The Court then concluded:

"The order in suit manifestly conferred upon Lawler a right to render a service

which was substantially different from that authorized in his two certificates, enabling him to compete directly with appellees in a manner in which he could not compete with them before, if in fact he could effectively compete with them at all before. It is elementary that advantage in service is one of the most important factors in competition, and that time is a prime element in transportation service. We are clear in the view that the application could not be granted as a mere rerouting under the two certificates, but that it required a showing and commission finding of convenience and necessity." Id. at 738.

The order of the Commission under review recites *"that in these respects"* the existing transportation facilities are not adequate or satisfactory and the public need will be better served and filled and the public convenience will be promoted by the granting of this application and permitting applicant to render the proposed service." "[T]hese respects" are stated by the Commission as follows:

"The Commission further finds from the evidence and its own records the pickup and delivery services of the existing common carriers operating between said termini are often slow, irregular and inconsistent; that delays and inconvenience are often caused on account of two line hauls now being performed by existing common carriers moving freight to and from points located beyond each of said termini, through and over the proposed route, which points are presently served by applicant; that the proposed service will permit applicant to render later and more prompt pickups of freight at points of origin and earlier deliveries at points of destination, thereby providing a more efficient handling and movement of such freight between said termini, from consignors to consignees; that such proposed service will also permit applicant to serve many points located beyond each of said termini presently served by applicant, with

direct one line hauls to and from such points by use of the proposed route between said termini, thereby eliminating the necessity of interchange of freight at either or both of said termini; * *."

These findings may be grouped as follows: (a) the pickup and delivery services of the existing common carriers operating between Houston and San Antonio "are often slow, irregular and inconsistent"; (b) "delays and inconvenience are often caused on account of two line hauls now being performed by existing common carriers moving freight to and from points located beyond Houston and San Antonio" (this finding not involving service between Houston and San Antonio); and (c) that the applicant, Missouri Pacific Truck Lines, Inc., will be able to improve its own service between the points it now serves. Missouri Pacific argues that even though the same criteria of public convenience and necessity and the adequacy of the service of existing carriers are present here, nevertheless the application should not be tested in all respects by the same standards as an application for original authority and that the quantum of proof required in alternate route cases should not be as exacting as in those for new authority. This is saying, in effect, that less evidence will constitute substantial evidence in an alternate route application than will do so in an application for original authority. But a grant of alternate route authority is a grant of new authority, Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957), and I know of no principle that will transform something less than substantial evidence into substantial evidence.

I will discuss the substantial evidence problem in the order of the two-fold grant of operating rights to Missouri Pacific, i. e., first, the authorization for a new common carrier motor carrier service between Houston and San Antonio over U. S. Highway 90; and second, the authorization for Missouri Pacific to coordinate this new route with the service it is authorized to

render under its other certificates of public convenience and necessity.

As to the first it is my view that the majority has fallen into the serious error of holding that some evidence as to some existing carriers is substantial evidence of inadequacies in the services of all the existing carriers. It is true that the thirty-five witnesses who testified in support of the application of Missouri Pacific to operate between Houston and San Antonio over U. S. Highway 90 adversely criticized, usually in general terms, the pickup and delivery services of some of the existing carriers. And perhaps it can be said that there is substantial evidence of the inadequacy of the pickup and delivery service and facilities of some of these carriers. But the statute does not speak in terms of the adequacy or not of the services *of some* of the existing authorized carriers; it speaks of the services of the existing carriers and this must be as a whole. It is at once evident that failure to enforce this statutory concept of public convenience and necessity will drive a wedge into the whole regulatory scheme. It is human experience that some people do business better than other people and that some companies operate more efficiently than others. This is true of the motor carriers. Some render better service than others; some specialize in certain fields to the neglect of others; some select choice tonnage and neglect tonnage not so desirable. As a consequence, it is always possible to find shippers who will adversely criticize the services of some carriers and evidence of some failures in service of some carriers is always obtainable. But the efficiently operating and protesting carrier, whether one or more, should not lose the regulatory protection of the motor carrier act because other carriers have fallen down. Inadequacies in the services and facilities of the existing carriers has not been established by proof of inadequacies in the services and facilities of some of the existing carriers.

The foregoing is well illustrated here. Herder Truck Lines, Inc. and its predecessor have been in operation between Houston and San Antonio since 1931. Approximately 40% of the total revenue of this carrier is derived from intrastate freight shipments moving between these termini. Twenty-two of the thirty-five witnesses supporting Missouri Pacific did not mention or testify concerning the Herder service. A study of the testimony of the fourteen witnesses in which Herder was mentioned, including every reference to such testimony by appellees in their briefs, establishes quite clearly that no substantial complaint was registered against the service of this carrier. Without belaboring the point, suffice it to say that a. finding of inadequacy in the service of this carrier quite clearly does not have reasonable support in the evidence. It is also doubtful if the evidence as to inadequacies in the pickup and delivery services of some of the other carriers will meet the test of substantiality. Many of the witnesses merely lumped together two or more of the carriers in general and conclusionary adverse comments. Moreover, the witnesses were unanimous in establishing their satisfaction with the present service of Missouri Pacific. So the question narrows to whether an order of the Railroad Commission authorizing a new common carrier motor carrier service between the important termini of Houston and San Antonio is supportable under the precepts of the substantial evidence rule where inadequacies in the services of at least one existing and protesting carrier are not shown, and, at the most, is doubtfully shown as to some of the other carriers. I think not. The authorization of a new motor carrier service in competition with existing carriers may be authorized by the Railroad Commission only when required by the public convenience and necessity and such is not reasonably shown by evidence that some carriers are not rendering the public an adequate and satisfactory service in some respects. To hold otherwise renders the regulatory scheme of the Texas Motor Carrier Act a hollow shell.

It penalizes the efficient and dependable carriers with additional competition brought about by the less dependable carriers, and increases the traffic hazard to the traveling public to the extent of the additional trucks of the new carrier which will necessarily traverse the highways in question.

In Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1963) we concluded there was in the record no substantial evidence supporting the findings of the Commission that there was a public need for the proposed motor carrier service or that the services and facilities of existing carriers were inadequate. We specifically pointed out that the witnesses who testified in support of the carrier-applicant "had not sought on such occasions to obtain services from other carriers known by him to be certified." This was unquestionably written in the concept that a public need for a proposed motor carrier service is not shown by evidence of failure or inadequacies in the services of some of the existing carriers.

In Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957), we said:

"The theory underlying the statutes applicable to motor carriers is that the public interest is better served by regulated rather than by excessive or destructive competition and in determining the issue of public convenience and necessity requisite to the creation of a 'new service' consideration must be given to the competitive effect upon presently operating carriers in the area and their continued ability to render effective public service."

In this opinion we again reaffirmed the correctness of Railroad Commission of Texas v. Red Arrow Freight Lines, Inc. from which I have quoted above.

I also refer to our recent action in Railroad Commission of Texas v. Curry Motor Freight Lines, Inc., 392 S.W.2d 186 (Tex. Civ.App.1965, writ ref'd n. r. e.). There we upheld the action of the lower court setting aside an order of the Commission, similar to the one under review, granting an alternate route application of Merchants Fast Motor Freight Lines, Inc., to operate between Lubbock and Amarillo. The emphasis there was upon the fact that Merchants was rendering a service between Lubbock and Amarillo and no showing was made that this service was not meeting the needs of the shipping public. The application there was for a direct route between these two termini as here between the termini of Houston and San Antonio. Here, as in *Curry,* the shipper-witnesses supporting the application of Missouri Pacific are using its present service between Houston and San Antonio, and to the "beyond" points, and have not found it inadequate or unsatisfactory for their needs.

It was correctly said in Railroad Commission v. National Transport Corp., 363 S.W.2d 360, 364 (Tex.Civ.App.1963, writ ref'd n. r. e.):

"Existing carriers are entitled to transport all of the traffic in the area of their authority as long as they can do so in a reasonably adequate manner, and until it be shown by substantial evidence that the existing carriers cannot adequately handle the traffic, there is no basis upon which new and competing operating rights can be granted."

I would hold, finally, that there is in the record no substantial evidence supporting the findings of the Commission that there is a public need for the proposal of Missouri Pacific to serve points beyond Houston and San Antonio by a coordinated use of the newly authorized route with its present routes. In actuality, this grant was a gratuity to Missouri Pacific in the sense that no serious effort was made to establish either that the public convenience and necessity requires this additional operation or that Missouri Pacific would improve its present service to and from these points. The evidence simply does not establish any

need for this newly authorized service. It is true that this particular operation is of relative unimportance to Missouri Pacific and its competitive impact upon the operation of existing carriers will not be severe. Nevertheless we should not close our eyes to the correctness of appellants' point of error asserting the absence of reasonable support in the evidence for this further grant of authority to Missouri Pacific.

I would reverse the judgment of the trial court and therefore respectfully dissent.